W. M. VANDERMARK v. E. PHILLIPS, ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 12, 1887—Decided April 25, 1887.

1. The provision of the act of April 21, 1856, § 3, P. L. 477 (as amended by the act of February 23, 1858, P. L. 45), requiring tax collectors to make their returns to the county commissioners for exonerations, on or before the first day of February of the year next succeeding the assessment of such taxes, is mandatory and its observance is a condition precedent of the right of the commissioners to sell the land so returned for the unpaid taxes.

2. The returns of the collectors for exonerations must be sufficiently definite to enable the owner and also the officer and the public to identify and determine from the returns the exact properties which are delinquent and liable to sale.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, CLARK and GREEN, JJ.; PAXSON, J., absent.

No. 121 January Term 1887, Sup. Ct.; court below, No. 233 May Term 1886, C. P.

This was an action of ejectment by William M. Vandermark against Esther Phillips and Joseph P. Phillips, her husband, and Catharine Hughes, now Jones, and William G. Jones, her husband, for a lot of ground situate in the city of Wilkes-Barre, Pa. By agreement of the parties the case was referred to Mr. Geo. W. Shonk, as referee, who found the facts to be as follows:—

In 1876 there was assessed to Thomas Hughes an improved lot on Hazel street, in the city of Wilkes-Barre, the property in controversy; also a vacant lot on Parrish street in said city. The total valuation of the first lot was $360, upon which taxes were assessed for 1876 as follows: bridge tax, eighteen cents, and county tax $2.88, a total of $3.06. The valuation of the second lot was $120, upon which the tax assessed for the same year was: bridge tax, six cents, and county tax ninety-six cents; total, $1.02.

George M. Miller was "receiver of taxes" in the city of Wilkes-Barre for the year 1876. March 6, 1878, he made return to the county commissioners of Luzerne county, of the exonerations claimed by him for the year 1876, the only return as to Thomas Hughes being: "Hughes, Thomas—vacant lot—sold three years ago—bridge, twenty-four cents, county three dollars and eighty-four cents."

The county commissioners certified to the county treasurer both of the above lots as delinquent, charging against each property, as delinquent, the amount of taxes assessed against it, as shown by the assessment book for the year 1876.

The county treasurer, after advertisement, sold the property in controversy to the county commissioners, 14th September, 1880. On December 14, 1885, the county commissioners sold the lot on Hazel street to William M. Vandermark by deed dated 14th December, 1885; and the only title or interest in said lot claimed by plaintiff is that which became vested in him by virtue of the preceding tax sale.

After evidence of the foregoing facts the defendants moved for a compulsory nonsuit, which motion was allowed by the referee, upon his finding as to the law as follows :

1. The 3d section of the act of April 21, 1856, P. L. 477, as amended by the act of February 23, 1858, P. L. 45, provides as follows : " It shall be the duty of . . . . . all collectors of any taxes whatsoever, to make return to the county commissioners of any exonerations claimed by them, on or before the first day of February in each year ; and it shall not be lawful for the said county commissioners to grant any exonerations after that time, nor for the county treasurer to sell any lands which shall have been returned and taxes exonerated after the said time."

Sales of lands for unpaid taxes are the creatures of our statutes, having been unknown to the common law and, therefore, they must be made in pursuance of and in conformity with the provisions of said statutes in order to pass title to the purchaser. Your referee cannot find that the Act of April 21, 1856, had ever been repealed, at least prior to the time these taxes were returned and exonerated. Neither can he believe, as urged by counsel for plaintiff, that the provision therein forbidding the exoneration of taxes returned by the collector after February 1st, following the year of their assessment, and forbidding the sale by the treasurer of any land for taxes then returned and exonerated, is merely directory and may be obeyed or disobeyed at the pleasure of said officers; or that the failure on the part of the officers to comply with these provisions is a mere irregularity which will not vitiate the sale. On the contrary, he holds that said provisions are mandatory on the officers and their observance is a condition precedent of their right to sell the said land; and if they sell any land not thus returned, the sale is void and the purchaser takes no title. The reasons which influenced the legislature to pass the act of 1856, were obviously to insure the prompt collection of the taxes and thus obtain a speedy and certain revenue to defray the public expenses, and, perhaps also to protect purchasers of real estate from loss from taxes which might remain unpaid for years and would otherwise be secret liens on the property.

If the view urged by the plaintiff should prevail, both these

objects would be defeated; for, if the collectors be permitted after any lapse of time to return the unpaid taxes and be exonerated therefrom, and the treasurer be permitted to sell the delinquent property for these taxes, then good bye to all hope in the future of a certain, reliable or speedy public revenue, and also to all security to the purchaser of real estate from the imperiling of his property by a mass of unpaid taxes for which his grantor was delinquent.

But the plaintiff's attorney further urges that the failure of the receiver to return said taxes on or before February 1, 1877, is cured by the provisions of the act of May 3, 1876, P. L. 98, and of June 12, 1878, P. L. 195; but an examination of those acts has satisfied the referee that they do not repeal or in any way affect the said act of 1856, but are entirely consistent with its provisions. They merely extended the life of the warrants of the tax collectors when they had not availed themselves of the opportunity to return their unpaid taxes and be exonerated therefrom under the provisions of said act of 1856, and thus had become personally liable for the whole amount of the duplicates. These acts of assembly were intended only to extend the warrants of these collectors and thus give them an opportunity to reimburse themselves from the personal property of the delinquent tax-payer by distress or otherwise.

2. The only authority of the commissioners to certify lands to the treasurer for sale for unpaid taxes is the return of the tax collector. Your referee is of the opinion that the commissioners are bound by the said return, and have no authority whatever to include in their certificate to the treasurer any lands whatever which are not returned delinquent by the collector. The tax sale is a proceeding against the property which is delinquent and not against the person of the tax-payer.

The collection of the taxes is not the duty of the commissioners, but of the tax collector. He alone has the means of knowing what properties are delinquent and what are not delinquent. The commissioners have no better means of knowing than any other citizen. The sworn return of the tax collector becomes at once, on being filed in the commissioner's office, an official record, and is as binding and conclusive as any other record.

As it seems to the referee the commissioners have no more

authority to go behind this record, even as a result of informal conversation with the collector himself, and say that his sworn return that the taxes on a vacant lot without designation of locality are unpaid, means that those assessed against an improved lot, on which is erected a double house, on Hazel street, are unpaid, than the Prothonotary would have to say that a declaration in a suit in his office showing that the plaintiff claimed $1,000 on a note for that amount, a copy of which was attached to the declaration, really was brought to recover the amount due on a $5,000 note and enter judgment accordingly; or when judgment had been entered on a *scire facias* issued upon a mortgage covering a vacant lot on Parrish street, and a *scire facias* is ordered, to assume upon the mere *ipse dixit* of the plaintiff that an improved lot on Hazel street was intended to be mortgaged, and direct the sheriff to levy upon and sell the said property on Hazel street.

The owner of the property has the right to know at once from the collector's return of delinquent properties which of his properties it is claimed is delinquent and liable to be sold; and he is entitled to this knowledge while everything is still fresh in his mind, and it is in his power to have any mistake of the collector remedied. He is right in determining that the only property which can be sold away from him is that which is returned delinquent by the tax collector. He should not be surprised two years later by the information that the commissioners, relying on hearsay evidence, entirely outside of the record, have concluded that an entirely different property was intended to be returned delinquent, and have certified the same to the treasurer for sale, saving possibly the right of amendment if made in proper time. It seems to the referee that the returns of public officers should be conclusive; and especially so in cases like this, where it is attempted to sell a man's property without personal notice to him that the claim against him is in process of collection.

3. The return of the collector must be sufficiently definite to enable the owner and also the officer and the public to identify and determine from the return the exact property which is delinquent and liable to sale.

The uncertainties necessarily incident to tax sales are, from the nature of the case, ample to prevent the property from

selling for more than half its value. To these necessary uncertainties we should not add any unnecessary uncertainty as to the location of the property returned delinquent. Any such uncertainty should be held to vitiate the sale : Philadelphia v. Miller, 49 Penn. St. 449 ; Lyman v. City, 56 Idem 501 ; Strauch v. Shoemaker, 1 W. & S. 177.

For each of these reasons your referee has concluded that the motion for a nonsuit in this case ought to prevail and has granted the same, and has overruled the motion made by the attorney for the plaintiff to strike off the said nonsuit.

To this report plaintiff filed exceptions to the findings of both fact and law, which exceptions the court, STANLEY WOODWARD, A. L. J., overruled, confirming the report, and entering judgment of nonsuit accordingly. The plaintiff thereupon took this writ assigning as error the action of the court in dismissing his exceptions and entering the judgment of nonsuit.

*Mr. Michael Cannon*, for the plaintiff in error :

The plaintiff's case in chief was fully made out by the evidence : Hathaway v. Elsbree, 54 Penn. St. 498 ; Foster v. McDivitt, 9 W. 344 ; Shearer v. Woodburn, 10 Penn. St. 511 ; Dikemad v. Parrish, 6 Idem 210 : Troutman v. May, 33 Idem 455 ; Foust v. Ross, 1 W. & S. 501 ; Wheeler v. Win, 53 Penn. St. 122.

All irregularities caused by any negligence of assessors or collectors were cured by the 4th section of the act of March 13, 1815, 6 Sm. L. 300 ; Heft v. Gephart, 65 Penn. St. 510 ; Hubley v. Keyser, 2 P. & W. 501 ; Devenney v. Reynolds, 1 W. & S. 333 ; Crum v. Burke, 25 Penn. St. 377 ; Cohen's App. 10 W. N. 230 ; Hess v. Harrington, 73 Penn. St. 445.

But it is said that the curative provisions of the act of 1815, does not apply to seated land sales made by the county treasurer for the non-payment of taxes assessed thereon. Yet the act of April 29, A. D. 1844, P. L. 501, § 41, says : " And the said lands shall be sold as unseated lands are now sold in satisfaction of the taxes due by the said owner or owners, etc. ; " and the act of 1850, P. L. 306, § 7, says : " He shall give the same notice of sale as is now required by law for the sale of unseated lands." The act of 1869, P. L. 340, § 1, whether it be a general or special act is questionable, yet if general, it re-

peals the provision of the act of 1844, that requires notice to be given to the owner by the county treasurer after the land is sold, and if not a general act, is immaterial, as the act of 1879, P. L. 55, is a general act, and is virtually a re-enactment of the act of 1869; so that it is clear that if they are to be advertised and sold by the county treasurer as unseated lands are now sold, that the curative provisions of the act of 1815 does apply to them; and that if they failed to sell for sufficient to pay taxes and costs it became the duty of the commissioners to purchase them under the provisions of the 5th section of the act of 1815, 6 Sm. 301, and to hold them for five years, unless sooner redeemed by the owner, etc., as provided by the 6th section of said act, and then to sell them at public sale for the best price that can be obtained as provided by the 1st section of the act of 1824, 8 Sm. 290, and that the owners were obliged to take notice of the statutes authorizing the sale of them for the non-payment of taxes: Cuttle v. Brockway, 32 Penn. St. 51.

*Mr. Allan H. Dickson* (with him *Mr. Q. A. Gates*), for defendants in error :

The return is a condition precedent to sale ; the act of 1844 does not extend the unseated land laws to seated lands in general: Dw. St. (Potter) 257 ; Hathaway v. Elsbree, 54 Penn. St. 502; East Union Twp. v. Ryan, 86 Idem 459; Bennett v. Birmingham, 31 Idem 15.

The return was not made in time; act of April 21, 1856, § 3, P. L. 477, and amendment, act of February 23, 1858, P. L. 45.

The return is too indefinite and misleading ; Dunn v. Ralyea, 6 W. & S. 479; Philadelphia v. Miller, 49 Penn. St. 449; Lyman v. City, 56 Idem 501 ; Strauch v. Shoemaker, 1 W. & S. 177 ; Hess v. Harrington, 73 Penn. St. 447 ; Brotherline v. Hammond, 69 Idem 134 ; Stewart v. Graffies, 8 S. & R. 344.

A sale of a lot for a joint tax on two lots is void : Stark v. Shupp, 112 Penn. St. 395.

The act of 1844 as amended by act of 13th May, 1879, P. L. 55, and 8th July, 1885, P. L. 268, is unconstitutional ; violating article XI, § 1, article III, § 7, and article III, § 6 ; Com. v. Patton, 88 Penn. St. 260; Scowden's App. 96 Idem 422;

Davis v. Clark, 106 Idem 377; Scranton School Dist.'s App. 113 Idem 177; Scranton v. Silkman, 113 Idem 191.

PER CURIAM:

There is no error in this judgment.   The return of taxes, was made too late in time, and too defective in form, to constitute a valid basis for a sale of the land in question.

Judgment affirmed.