Muccioli et ux. v. Kaminski

562

Before McCann, P. J., and McKenrick and Griffith, JJ.

*Samuel R. DiFrancesco*, for plaintiffs.

*Walter E. Glass*, of *Glass & Glass*, for defendant.

McCANN, P. J., April 16, 1951.—This case was submitted to the court upon a stipulation of facts.

This is an action of ejectment to recover possession of a parcel of ground containing 2.85 acres situate in Middle Taylor Township, Cambria County, Pa., which was owned by Eli Stutzman at the time of his death on October 12, 1925. Plaintiffs brought an action of ejectment against defendant to June term, 1946, no. 85, to recover possession of the above-mentioned parcel of ground, claiming under a tax title obtained at private sale from the county commissioners. After hearing the trial judge filed his adjudication, to which exceptions were filed by defendant. The validity of plaintiffs' tax title and the right of defendant to question it was argued twice in that case before the court en banc, first, on the requests filed by the parties before the trial judge filed his adjudication, and second, on the exceptions filed by defendant. On August 26, 1949, before the court had disposed of that case, plaintiffs procured a quitclaim deed for the land involved from the heirs and devisees of Eli Stutzman, deceased. The action brought to June term, 1946, no. 85, has been discontinued.

In the present case plaintiffs claim under the same tax title set up in their prior suit, as well as under the quitclaim deed. Defendant claims as a vendee in possession under an unrecorded written agreement entered into between him and Sarah M. Stutzman et al., devisees of Eli Stutzman, deceased, dated December 22, 1936, which he has fully performed, and in his answer again sets up the invalidity of plaintiffs' tax title.

The questions involved herein are as follows:

1. Did any title to the land involved pass to the county commissioners by the county treasurer's sale?

2. Has defendant standing in this action to question the validity of plaintiffs' tax title?

3. Was defendant's equitable title to the land involved divested or affected by the quitclaim deed procured by plaintiffs?

4. Under the stipulated facts, is defendant entitled to a verdict in his favor?

Defendant contends the county treasurer's sale was void and passed no title to the county commissioners for the following reasons:

1. The assessments upon which the treasurer sold were made in the name of Eli Stutzman estate as owner.

2. In the assessments upon which the treasurer sold, the assessor assessed together as a single tract two tracts of land owned by different persons.

3. The assessments upon which the treasurer sold were double assessments.

4. The tax collector's returns do not contain, nor did he file therewith, a sufficient description to identify and disclose the property taxed.

5. The county treasurer's deed to the county commissioners does not contain a sufficient description to identify and disclose the property taxed and sold.

The records in the commissioners' office show that the assessments for 1933 and 1934 upon which the county treasurer sold were made in the name of Eli Stutzman estate as owner. Section 407(c) of the Act of May 22, 1933, P. L. 853, 72 PS §5020-407(c), which did not change the prior law, makes it the duty of the assessor "to ascertain the owner or owners of each tract, piece, parcel or lot of ground assessed, at the time of such assessment, and to assess the same in the name of the then owner or owners." This statutory

requirement is for the protection of the taxpayer and is therefore mandatory: Scranton v. O'Malley Manufacturing Co., 341 Pa. 200. In Jones v. Beale, 217 Pa. 182, it was held that there is no such legal entity as an "estate". Under section 417 of the Act of May 22, 1933, 72 PS §5020-417, the property might have been assessed in the name of Eli Stutzman, or in the name of his executor or administrator, or in the name of his heirs generally without naming them, or in the name of any one of his heirs, if the land were still an asset of Eli Stutzman's estate for any purpose. But title to the property had passed under the will of Eli Stutzman to his devisees at his death on October 12, 1925. His will was probated November 4, 1925. The assessor could have ascertained from the public records, if not by inquiry on the premises, who the owners of the property were and assessed it in the name of one or more of them in compliance with the mandatory requirements of the statute. Instead, he assessed the property, not in the name of any person but in the name of the estate of Eli Stutzman, deceased. We are satisfied that such an assessment is void: In re Property of Hazard, 37 Luz. 217.

Plaintiffs cite the case of Goeringer v. Ansilio et al., 38 Luz. 388, where it was held that a "County treasurer's sale of land for unpaid taxes under Act of 1931 . . . is not void when assessed in name of decedent's estate and so advertised, and written notices directed to said estate." (Syllabus.)

It is contended by defendant that there is no proof in the present case that any written notices were sent to any one, and that the decision in that case rests entirely upon inapplicable dictum in Philadelphia v. Sulzer's Estate, 342 Pa. 37, where a scire facias on an existing tax lien was directed against "Estate of Gustavus W. F. Sulzer." Defendant contends that the point ruled was, not that a scire facias could be issued

against an "estate", or that such writ, if so issued, was good, but that such defect could be cured by amendment. Defendant further contends that an assessment cannot be amended or changed after the property has been returned by the tax collector as delinquent. Defendant therefore contends that the case is contrary to the plain mandatory provisions of the above-mentioned statute and cannot be sustained either upon principle or authority. With this we agree.

Beginning with 1894 the tract of land owned by Eli Stutzman, the residue of which is the land in suit, and the 18-acre tract owned by Sarah M. Stutzman, or the residue thereof, were assessed together as a single tract in the name of Eli Stutzman as owner until 1930 and thereafter, through 1934, in the name of Eli Stutzman estate. Section 402 of the Act of 1933, 72 PS §5020-402, makes it the duty of the assessor to assess all parcels or lots of ground "at such rates and prices for which the same would separately bona fide sell." As above pointed out, section 407(c) of the act requires the assessor to ascertain the owner or owners of each tract, piece, parcel or lot of ground at the time of making the assessment and to assess the same in the name of the then owner or owners. The Act of 1933 applies to the assessment of both seated and unseated land, but it did not change the requirements as to the assessment of either seated or unseated land as prescribed by prior statutes. In Brown v. Hays, 66 Pa. 229, 235, it was said:

"The acts relating to the assessment of unseated lands are plain, and require the assessor to assess and return the lands in his township in single tracts according to their ownership."

In Fisk v. Corey, 141 Pa. 334, where the question was discussed, beginning on page 346, it was held that where two tracts of unseated land owned by different persons are assessed together as a single tract, such

assessment is void. These cases apply with equal cogency to the assessment of seated land under the Act of 1933 and compel the conclusion that two tracts of seated land owned by different persons cannot legally be assessed together as a single tract. See also McCormick et al. v. Berkey et al., 238 Pa. 264, where it was held that the assessor was required to assess as a single body the adjacent seated lands of an owner and could not divide the land for the purpose of taxation, unless such division were made by the owner himself. Defendant contends that since the residue of the tract formerly owned by Eli Stutzman containing 2.85 acres and the residue of the tract owned by Sarah M. Stutzman containing 5.2 acres were assessed together for 1933 and 1934 as a single tract described as "surface, 7 acres, 1 house", said assessments are void. We believe this to be a correct statement of the law.

The residue of the Sarah M. Stutzman tract which contains 5.2 acres and has a dwelling house erected thereon was separately assessed to her for 1933 and 1934. It was also included in the tract described as "surface, 7 acres, 1 house" assessed in the name of Eli Stutzman estate for the same years. The county treasurer sold the property assessed under each assessment to the county commissioners, who in turn sold the properties purchased by them at the sales. An assessment is against the land as a tract regardless of title and of how the tract assessed is made up. Under these circumstances, the assessment of the tract described as "surface, 7 acres, 1 house" for 1933 and 1934 in the name of Eli Stutzman estate was a double assessment, and a county treasurer's sale predicated upon that is void.

It also appears that the tax collector's returns in this case were invalid because section 1 of the Act of May 29, 1931, P. L. 280, 72 PS §5971(a), requires the

tax collector in returning delinquent land for unpaid taxes to include in his return, or file therewith, "a description of said real estate by adjoiners, or otherwise, sufficient to identify said land with name of the owner or reputed owner against whom such taxes were assessed and levied . . ."

The tax collector's return must be sufficiently definite to enable the owner and also the officer and the public to identify and determine from the return the exact property that is delinquent and liable to sale: Vandermark v. Phillips, 116 Pa. 199; Norris v. Delaware, Lackawanna & Western Railroad Co., 218 Pa. 88. Where the return itself contains some description other than merely the name of the owner, parol evidence is admissible to identify the delinquent land, but such evidence may not be substituted for the description required to be in the return as a source of identification. Neither may a description in the assessment take the place of the description required to be in or filed with the tax collector's return, because the owner, the officer and the public must be able to identify and determine the delinquent property from the return itself. We believe, therefore, that the returns involved here are invalid and that the treasurer's deed did not pass any title.

Defendant contends that he is not precluded from questioning the validity of plaintiffs' tax title for two reasons: (1) The bar of section 12 of the Act of 1931 does not operate where the county commissioners are the purchasers, and (2) section 12 does not bar judicial inquiry into the authority of the county treasurer to sell. The relevant part of section 12, as originally enacted, which is the applicable statute in this case, reads as follows:

"If no objections or exceptions are filed as herein provided or where objections or exceptions are finally overruled and the sale confirmed absolutely, the valid-

ity of the assessment of the tax and its return for non-payment, and the validity of the proceedings of the treasurer with respect to such sale shall not thereafter be inquired into judicially, in equity or by civil proceedings, by the person or persons in whose name such property was sold, his or her or their heirs, or his, her or their grantees or assigns, subsequent to the date of the assessment of the taxes for which such sale was made; and such sale, after the period of redemption shall be terminated, shall be deemed to pass a good and valid title to the purchaser as against the person or persons in whose name such property was sold; Provided, the purchaser has filed the bond for surplus moneys as hereinafter provided."

The bar of the statute does not operate where the county commissioners purchase. Section 12 provides that the validity of the assessment, etc., may not be inquired into judicially, provided that the purchaser has filed a bond for the surplus purchase money. Such bond is required by section 13 of the act, 72 PS §5971 (*m*), and then only "where the bid exceeds the taxes, interest and costs". The office of a proviso in a statute is to except something from the enacting clause, or to restrain its generality: Friese's Estate, 317 Pa. 86; Montgomery, Jr., v. Martin et al., 294 Pa. 25. In Whitaker Borough v. Pennsylvania Public Utility Commission, 163 Pa. Superior Ct. 238, it was held that all provisions in an act must be read in the light of their immediate context, and that this is particularly true of provisos, and that under section 54 of the Statutory Construction Act, 46 PS §554, provisos shall be construed to limit rather than to extend the portion of the clause to which they refer. The county commissioners are permitted and required to purchase property at a county treasurer's sale only where an amount sufficient to pay the taxes, interest and costs is not bid for the property at the treasurer's

sale. The property is sold to the commissioners for the amount of the taxes, interest and costs. In that situation, no surplus purchase money bond is given or required. The only effect that can be given to the proviso in section 12 is to limit the bar therein contained to cases where the property is sold to a private purchaser for an amount in excess of the taxes, interest and costs; otherwise, the proviso is meaningless, serves no purpose, is given no effect, and is regarded as a nullity. Where the property is sold for more than the taxes, interest and costs the former owner has the option, either to redeem the property, or collect the surplus purchase money as provided by section 13 of the act. There is, therefore, good reason why the person in whose name the property was sold, or his heirs, or his or their grantees or assigns, who became such subsequent to the assessment, should be and are barred from impeaching the sale to a private purchaser, except for fraud or want of authority of the treasurer to sell. The legislature intended by the 1939 amendment of section 12 to strengthen tax titles by making them more attractive and therefore more readily marketable, thereby encouraging private purchasers to bid at tax sales. The county commissioners need no such encouragement. They pay no money, but merely become the agency to collect the tax. There is no sound reason why the title acquired by the county commissioners should be strengthened by the perfunctory formality of a treasurer's sale. It is made plain from a consideration of the entire statute that the "purchaser" to whom the sale "shall be deemed to pass a good and valid title", as used in section 12, means a private purchaser, and not the county commissioners. Defendant contends that where, as in this case, the property is sold to the county commissioners, the bar of section 12 does not operate, and we believe that this is correct.

Section 12 of the Act of 1931 does not bar judicial inquiry into the treasurer's authority to sell. A valid assessment is a necessary prerequisite to a tax sale, otherwise the sale is void: Nypen Corporation v. Sechrist et al., 138 Pa. Superior Ct. 361. There can be no valid tax sale if the tax collector has not made a valid return of unpaid taxes: In re Wilson Borough Tax Lien, 28 Northamp. 215. There is no doubt in our mind that a valid assessment of the tax and a valid return thereof by the tax collector are jurisdictional prerequisites to a valid tax sale, and in the event that either the assessment or the return be invalid, the treasurer has no authority to sell. The sale is void and his deed will pass no title to the purchaser: Simpson v. Meyers, 197 Pa. 522; Scranton v. O'Malley Manufacturing Co., 341 Pa. 200, 208. We are satisfied that the assessments for 1933 and 1934 are invalid, that the tax collector's returns for these years are invalid and that the treasurer's deed is also invalid. Therefore, the county treasurer had no authority to sell and no title passed to plaintiffs in this case.

There is only one other question involved: Was defendant any longer the equitable owner of the property after the heirs of Eli Stutzman made a quitclaim deed to plaintiffs?

Defendant contends that plaintiffs' counsel, in his argument of this question, makes statements in his brief contrary to the stipulated facts, or states as facts matters which may not be inferred from the stipulated facts and which are not true. These are stipulations 16, 22, 24 and 25. Defendant contends that he was not in default in his payments since December 1, 1942, or that he was inactive and did nothing about redeeming the property, or that he had actual knowledge that the property was up at private sale, or that he made a bid for the property which was not accepted by the

county commissioners because it was not the highest bid and therefore the property was sold to plaintiffs.

In addition to their tax title, plaintiffs seek to recover under a quitclaim deed procured from the heirs of Eli Stutzman, deceased. Of course, a quitclaim deed conveys nothing except the interest of any of the owners in the property. Since the tax sale under which plaintiffs claim was void, and as a result the legal title of the former owners, defendant's vendors, was not divested by the tax sale, plaintiffs acquired the legal title to the land in suit by their quitclaim deed. But, as has been stipulated, plaintiffs knew when they took the quitclaim deed that their grantors had previously agreed to sell the property to defendant and that he was in possession of the property under such agreement. Plaintiffs, therefore, took the legal title subject to the equitable estate already vested in defendant: Riel v. Gannon, 161 Pa. 289, 294; Broadhead v. Reinbold, 200 Pa. 618. Plaintiffs merely stand in the shoes of defendant's vendors; they succeed to the rights and obligations of their grantors. The only effect of the quitclaim deed, defendant contends, and we are satisfied that his contention is right, is that his vendors cannot now require him to make any further payments to them.

Plaintiffs contend that when they procured their quitclaim deed the equitable estate of defendant in the land terminated, and they quote from Robey on Real Estate and Conveyancing in Pennsylvania, to the effect that where the buyer is in default, and the seller resells the property, the equity of the buyer in the property is thereby terminated. The equitable estate of the buyer in the property is terminated by a resale of the property by the seller only where the seller is able and ready to perform the agreement on his part but the buyer refuses or is unable to carry out his part of the agreement. See Sanders v. Brock, 230 Pa. 609. The

result does not follow where, even though the buyer is in default, the seller is also in default and unable to perform on his part, which is the situation in this case.

If defendant was in default when he made his last payment on August 28, 1943, his vendors were also in default. They could not then convey the property to defendant by a general warranty deed in fee simple free from all encumbrances, as they had agreed to do. They had permitted a property assessed as "surface, 7 acres, 1 house", which included the premises involved in this case, to be sold by the county treasurer on June 27, 1938, for the unpaid taxes assessed against this seven-acre tract for 1933 and 1934. Thus, the title of defendant's vendors to the property in suit was clouded by an outstanding tax title. Prima facie, defendant's vendors had lost the property, unless it were redeemed from the tax sale, which they neglected to do and subsequently refused to do. Under these circumstances, defendant could delay making any further payments without prejudicing his equitable title until his vendors, or whoever held the legal title, were in a position to make and tender to him a proper deed according to the agreement, or undertook by ejectment to collect the balance of the purchase money or oust him from possession of the land. Then only was it incumbent upon defendant to perfect his equitable title by performing, or offering and showing a readiness and ability to perform, his part under the agreement: Allen v. Woods, 24 Pa. 76. Both parties being in default, the payment of the purchase money and the delivery of a deed free from liens and encumbrances were concurrent conditions: Swartz, Administratrix, v. Crum, 110 Pa. Superior Ct. 102. A party himself in default has no right to insist on recision while in default: Irvin v. Bleakley, 67 Pa. 24. Plaintiffs who succeeded to the obligations of their grantors, defendant's vendors, are bound to regard compliance with

their part of the contract as a condition precedent and must tender performance thereof: Heights Land Co. v. Swengel's Estate et al., 319 Pa. 298. Not having done so, they cannot maintain their present action.

Defendant paid the balance of the purchase price into court simultaneously with the filing of his answer on October 24, 1949, in full performance of the contract on his part. Counsel for plaintiffs argues such payment would not restore defendant's "legal rights"; and further, that defendant "is now barred by laches in making the offer to pay the balance of the purchase price," because he did not make such offer in the action brought to June term, 1946, no. 85. Defendant was not required to make such offer in that action, because plaintiffs were not then entitled to receive the balance of the purchase money whether their tax title was good or bad. If plaintiffs' tax title were good, they recovered the property; if it were bad, plaintiffs were not entitled to the balance of the purchase price because they did not then hold the legal title. Defendant acted to fully perform his contract on his part as soon as any one who was in position to convey the property to him in fee simple free from encumbrances undertook to disturb his possession or to enforce the agreement against him. This situation arose for the first time when plaintiffs obtained their quitclaim deed and instituted the present action. We do not believe defendant is guilty of laches.

Defendant is required to assert his equitable title as a defense in the present action, since plaintiffs now hold the legal title, which puts him in the position of a plaintiff in equity seeking specific performance of the contract: Thompson v. McKinley's Administrator, 47 Pa. 353, 355; Dutton's Estate, 208 Pa. 350, 357. Defendant has perfected his equitable title by paying the balance of the purchase money into court in full performance of the agreement on his part and, there-

fore, is entitled to hold possession as against plaintiffs, since he is now entitled to specific performance: Paralka et ux. v. Grummel et ux., 282 Pa. 235. The holder of the legal title cannot maintain ejectment against the holder of the equitable title: Brolaskey v. McClain, 61 Pa. 146.

Defendant contends that he is now entitled to a deed and there is no occasion for the entry of a conditional verdict in favor of plaintiffs, but that defendant is entitled to an unconditional verdict in his favor. We believe this to be correct.

To summarize, the court is of the opinion that, since the assessments for 1933 and 1934, the tax collector's returns for those years and the treasurer's deed are invalid, and the assessments being double, no title to the land in suit passed to the purchaser at the treasurer's sale held June 27, 1938; that the bar of section 12 of the Act of May 29, 1931, P. L. 280, operates only in favor of private purchasers and, further, does not prohibit judicial inquiry by any person into the authority of the county treasurer to sell; that defendant's equitable title was not affected by the quitclaim deed, but by this deed plaintiffs merely succeeded to the rights and obligations of their grantors, and plaintiffs are bound to tender performance of the contract as a condition precedent to maintaining this action and are entitled to receive the balance of the purchase money; and that defendant, having fully performed the contract on his part, is entitled to a decree of specific performance and, therefore, to an unconditional verdict in his favor.

## Decree

And now, April 16, 1951, after argument and upon due consideration, judgment is hereby entered in favor of defendant and against plaintiffs for the land described in the writ, and plaintiffs are directed to make

specific performance of the contract by conveying this property to defendant in fee simple by general warranty deed free and clear of all liens and encumbrances, as provided in the agreement of sale.