# Norris, Appellant, v. Delaware, Lackawanna & Western Railroad Company.

*Tax sales—Collector's return—Assessments—Notice—Identification of property.*

In order to give a purchaser at a tax sale a good title the provisions of the statutory law regulating the subject must be complied with. The right to make a sale of real estate for unpaid taxes is wholly statutory and hence the necessity in order to give validity to the sale that the provisions of the statute be observed. The several steps resulting in the sale are the assessment of the property, a return by the collector to the county commissioners when the taxes are not paid, and an advertisement and sale by the treasurer. These several steps must be taken and in the manner pointed out in the statute, if the title of the real owner is to be divested and vested in the purchaser by a tax sale. The assessment, the return by the collector, and the conveyance by the treasurer should sufficiently identify the property so that the record will identify and disclose the property taxed and sold.

The description of the land in the return of the collector should also be definite; and sufficiently so to enable the owner and also the officer and the public to identify and determine from the return the exact property which is delinquent and liable to sale. The owner should have an opportunity to pay the taxes or redeem the land after it has been sold within the time permitted by the statute, but this right will be denied him if by reason of an insufficient description the return fails to disclose the location of the property and hence its ownership. It is not the intention of the law, even in cases of tax sales, that an owner shall be deprived of his property by failure to perform a duty imposed by that law, unless he has notice of an opportunity to discharge the duty.

Argued April 16, 1907. Appeal, No. 112, Jan. T., 1907, by plaintiff, from judgment of C. P. Luzerne Co., May T., 1905, No. 347, on verdict for defendant in case of James M. Norris and Grizzie G. Norris, his wife, v. Delaware, Lackawanna & Western Railroad Company and Charles D. Foster. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Ejectment for land in Plymouth township. Before FERRIS, J.

At the trial the jury returned a verdict for defendants under binding instructions.

On a rule for a new trial FERRIS, J., filed the following opinion:

On and before February 2, 1882, Sarah Horton was the owner in fee of fourteen acres of land in the said township, being part of a larger body of land lying between the hills forming the northwesterly boundary of the Wyoming Valley and the Susquehanna river, and commonly known as " the Kingston Flats "—or simply as the " Flats." By a written instrument of that date, termed a coal lease, she granted to the Delaware, Lackawanna and Western Railroad Company, defendant, all the coal underlying the said tract, with the right to mine and remove the same. The lease was duly recorded in the office of the recorder of deeds on February 10, 1882. Upon the execution of this instrument a severance was effected between the surface land and the subjacent strata; Mrs. Horton remaining liable for the taxes on the former, and the defendant company becoming primarily responsible for taxes on the latter (Sanderson v. Scranton, 105 Pa. 469), although by

terms of the coal lease, as between the parties thereto, the lessors assumed the payment of taxes on the coal in place.

Mrs. Horton died intestate July 18, 1888, leaving to survive her six children, who, by their deed dated May 26, 1892, conveyed the surface estate in the said fourteen acres to Uriah Beacham.

By indenture of assignment, dated June 13, 1894, Julian G. Horton, one of the six heirs of Sarah Horton, deceased, assigned to C. D. Foster (defendant) all the former's right, title and interest in and to the coal lease above mentioned.

For the years 1897 and 1898, Mr. Beacham was assessed for, and paid to the proper collector, taxes on his fourteen acres of surface land in Plymouth township. The description in the original assessment for each year is, as to location, "Kingston Flats," and as to quantity, etc. (under the heading "acres—No. of acres of cleared land"), the figures "14."

The assessment books for Plymouth township for these same years also show the following:

1. For the year 1897.—Under the heading "Names of taxables," etc., is the name "Mrs. Sarah Horton;" under the heading "Description of real estate . . . . street, adjoining owner" is the word "Flats;" and under the heading "Seated lands improved and unimproved—Number of acres of coal only —acres" are the figures "14." No other description of the coal estate sought to be assessed is given.

The tax collector's return, filed December 31, 1897, contains the following: In column with word "owner" is the name "Mrs. Sarah Horton Estate;" in column headed "Quantity and description of property, boundary by warrantee name, number of lot, street or adjoining property" appear the words "Kingston Flats cannot find."

2. For the year 1898.—The assessment book for Plymouth township contains the following:

In the column headed "name of owner," etc., is the name "Mrs. Sarah Horton, C. H. Welles, 5/6, Scranton;" in the column headed "Description of real estate," etc., is the single word "Flats;" in the column headed "Real Estate"—subdivision "coal only, acres" are the figures "14." No other description or identification of the coal sought to be assessed is given.

The tax collector's return, filed December 31, 1898, contains the following : In the column with the word " owner " appears the name " Sarah Horton," and opposite her name and in the column headed " Quantity and description of property," etc., is the single word " Flats." No other description or identification of the land returned is given.

In each return the collector certified that the owners had neglected or refused to pay the tax assessed on the land mentioned, and that after a proper effort at the proper time he could not find sufficient personal property by a legal sale of which the taxes specified in the return could have been collected. The tax collector for 1897 and 1898 was sworn on the trial and testified that he made no demand on the owners of the coal estate for the taxes assessed as above stated ; that he went to Mrs. Horton's late residence for that purpose, but was told that the heirs had sold the property ; that he made no inquiry as to whom it had been sold, nor did he examine the records to ascertain that fact ; but that he then made the return marked with " cannot find." (Page 24 of testimony.)

· It will be observed that no " coal only " or land described in any way as coal land was returned as delinquent. The return of fourteen acres of land as " Flats " or as " Kingston Flats " contained nothing to indicate what particular piece of land embracing fourteen acres located on what is known as the " Flats " was intended, except in so far as the name " Sarah Horton " or " Sarah Horton Estate " might tend to identify it. Let it be assumed that Sarah Horton owned no other tract of fourteen acres on these flats. There is still absolutely nothing to show the owner of the coal that this property had been returned for sale for unpaid taxes. Upon examination he might discover that a tract containing fourteen acres of " Flats " had been so returned in 1897 and 1898 for taxes assessed for those years against " Sarah Horton " and " Mrs. Sarah Horton Estate." He could not know from these returns that his coal was intended rather than the surface sold by the Horton heirs to Beacham. Indeed, the only descriptive words used, " Flats " in the one case, and " Kingston Flats cannot find " in the other, might well be taken to mean surface land as opposed to " coal only." where there had been a severance, of which latter fact the coal owner must have been aware. We were of opinion at

the trial, and that opinion remains unchanged, that a return and sale for taxes by the treasurer and commissioners of fourteen acres of land designated as "Flats" is not a return and sale of a like quantity of other land whose sole distinctive description is that it is "coal only;" and that the collector's return was insufficient to operate as notice to the coal owner that his estate was liable to be divested. That the tax collector not only failed to make a demand for the taxes on the owner, but also failed to use due diligence to that end, is clear from his own evidence. Neither was there anything in the published advertisement of the tax sale to notify the owner of the coal estate that his property was liable to be sold for taxes.

"Coal only" was assessed. No coal was returned. No coal was sold. The conclusion would seem to follow that no coal can be recovered by the plaintiff in this action.

As was said by the present Chief Justice in Kean v. Kinnear, 171 Pa. 639, and by Mr. Justice DEAN in the recent case of Davis v. Beers, 204 Pa. 288, so it may with equal propriety be said here—"that (in cases of seated lands) the law has established the order for liability for taxes to be, first, the personal property on the premises; second, demand on the owner individually, and lastly, the land itself, and it is only the failure to collect by the first two methods that resort can be had to the third and the land be legally sold or returned for sale."

The contention that the owner of coal in place may have his property swept away by a deed for "land" based on a return of land called "Flats" for nonpayment of taxes assessed on "coal only," where he had covenanted with his lessor that such taxes should be paid by the latter, where no demand had been made on the owner for their payment nor any notice given him by advertisement or otherwise, that the taxes on the coal remained unpaid—such a contention might with some show of reason be held to be open to the criticism expressed by Mr. Justice MESTREZAT in Simpson v. Meyers, 197 Pa. 522 (527), quoting from the syllabus to Jenks v. Wright, 61 Pa. 410: "The acts authorizing sales of land by the Commissioners or Treasurer are laws for collection of taxes; not to sacrifice individual property as a forfeiture."

Counsel for the plaintiff urge, as the fourth reason for a new trial, that "the court erred in admitting in evidence the

papers (newspapers) offered by the defendants to show how the property in controversy had been advertised," and argue, in support of this reason, that the advertisements were admitted without prior proof that they were official and were authorized to be published in the newspapers in question by the county commissioners. This might have been a good objection if it had been made at the trial. But it was not, and therefore is to be treated as waived. But it is difficult to see how the admission of this evidence, even if it was error, could prejudice the plaintiff's case, since the advertisements are in substantial conformity with the recital in the commissioners' deed to Mrs. Norris "that a public sale of the said described lot or tract of land" had been duly advertised, etc.; "the said described lot being a certain lot, piece or parcel of land situate in the Township of Plymouth, in the County of Luzerne and Commonwealth of Pennsylvania, containing one-sixth interest in 14 acres on which is————and which was assessed in the year of our Lord one thousand eight————, in the name of Mrs. Sarah Horton, and adjoining property of————," etc. The declared purpose of the offer was to show that there was no mention made in the advertisement of the fact that any coal property was delinquent for the nonpayment of taxes. The objection which was made is as follows: "Plaintiff objects to the offer for the purpose stated inasmuch as there is nothing in the act of assembly prescribing the form of advertisement to the effect that coal only should be advertised as coal." If the newspapers had been excluded it would be presumed from the recital in the deed that an advertisement of the sale of "the said described lot" had been duly published. Either the advertised description of the lot was as contained in the deed or it was not. If it was, then it (like the deed) did not follow the assessment. If it was not, then the deed did not follow the advertisement.

The first, second and third reasons assigned for new trial relate to the rejection of testimony. We are not satisfied that there was error in the rulings complained of.

The fifth, sixth, seventh, eighth and ninth reasons allege error in the court's remarks to the jury and answers to points for charge. As binding instructions were given, what was said to the jury or by way of answers to points was immaterial

except the affirmance of defendants' fifth point, which asked for binding instructions : Trust and Safe Deposit Co. v. White, 206 Pa. 611.

*Error assigned* among others was in giving binding instructions for defendant.

*W. Alfred Valentine*, with him *A. L. Williams* and *Henry W. Dunning*, for appellants.—Certainly the identification of the coal land sold was a question for the jury : Woodside v. Wilson, 32 Pa. 52 ; Russel v. Werntz, 24 Pa. 337 ; McClements' App., 2 Pa. Superior Ct. 443 ; Phila. v. Miller, 49 Pa. 440.

Where after severance of the surface and coal, the taxes against both are assessed as to the entire estate as unseated lands, the purchaser at the tax sale acquires a good title to the minerals : Hutchinson v. Kline, 199 Pa. 564 ; Huss v. Jacobs, 210 Pa. 145 ; City of Philadelphia v. Miller, 49 Pa. 440 ; Brundred v. Egbert, 164 Pa. 615.

*Arthur Hillman* and *A. H. McClintock*, for D., L. & W. R. R. Co., appellees.

*John McGahren*, with him *P. A. O'Boyle*, for Charles D. Foster, appellee.

Opinion by Mr. Justice Mestrezat, May 6, 1907 :

This is an action of ejectment to recover the undivided one-sixth interest in fourteen acres of coal land in Plymouth township, Luzerne county. Mrs. Norris, one of the plaintiffs, claims title to the land by virtue of a commissioners' sale for unpaid taxes. In his opinion refusing the motion for a new trial, the learned judge has found and stated at length the facts of the case and they need not be repeated here. His instruction to the jury to find a verdict for the defendants was warranted by the evidence.

1. It is well settled in this state that in order to give a purchaser at a tax sale a good title, the provisions of the statutory law regulating the subject must be complied with. The right to make a sale of real estate for unpaid taxes is wholly statutory and hence the necessity in order to give validity to the

sale that the provisions of the statute be observed.   The several steps resulting in the sale are the assessment of the property, a return by the collector to the county commissioners when the taxes are not paid, and an advertisement and sale by the treasurer.   These several steps must be taken and in the manner pointed out in the statute, if the title of the real owner is to be divested and vested in the purchaser by a tax sale.   The assessment, the return by the collector, and the conveyance by the treasurer should sufficiently describe the property so that the record will identify and disclose the property taxed and sold.   Says AGNEW, J., in Philadelphia v. Miller, 49 Pa. 440 : " The evidence of identity is the record which contains the description and fixes the duty.   Assessment is, from its legal requirement, and the necessity of preserving its evidence, a written entry, and must depend upon the records of the commissioners' office, and not upon parol testimony, or the private duplicate of the assessor. . . .   It is the assessment which confers the power to sell, in the same manner as a judgment on which an execution is issued.   It is the assessment, therefore, which must contain the means of identification of the ownership in order that the proprietor may pay his tax, or redeem if he fails to pay in time. . . .   The result of the whole is, that where the assessment wholly fails to lead to identification, so that neither the owner nor the officer can tell that his land is taxed, the duty of payment cannot be performed, and the assessment is void."

The description of the land in the return of the collector should also be definite ; and sufficiently so to enable the owner and also the officer and the public to identify and determine from the return the exact property which is delinquent and liable to sale : Vandermark v. Phillips, 116 Pa. 199.   The owner should have an opportunity to pay the taxes or redeem the land after it has been sold within the time permitted by the statute, but this right will be denied him if by reason of an insufficient description the return fails to disclose the location of the property and hence its ownership.   It is not the intention of the law, even in cases of tax sales, that an owner shall be deprived of his property by failure to perform a duty imposed by that law, unless he has notice or an opportunity to discharge the duty.   As said by AGNEW, J., in Philadelphia

v. Miller, 49 Pa. 440 (p. 448): "Notice, or at least the means of knowledge, is an essential element of every just proceeding which affects rights of persons or property." If the owner is expected to perform his duty and pay the taxes, the least that can be expected of the taxing officers is that they will give him an opportunity to do so. In Vandermark v. Phillips, 116 Pa. 199, it is said (p. 203): "The owner of the property has the right to know at once from the collector's return of delinquent properties which of his properties it is claimed is delinquent and liable to be sold; and he is entitled to this knowledge while everything is still fresh in his mind, and it is in his power to have any mistake of the collector remedied." And in Lyman v. Philadelphia, 56 Pa. 488, AGNEW, J., after saying that the fact that the return constitutes the evidence of the assessment is conclusive against the argument that by act of 1815 no alleged irregularity in the assessment or process shall be construed to affect the purchaser's title, proceeds as follows (p. 502): "Affect his title to what? If nothing capable of identification be returned, what is to be affected (by the sale)? If no discoverable thing be returned, how can anything be sold? It is not irregularity, but the absence of anything to be sold. And if this subject can be supplied by evidence wholly dehors the assessment, what is to prevent fraud or perjury from applying it to my land or his, as well as to the particular tract for which a suit is brought? The guess can be made in one direction as well as in another."

In 1882, Sarah Horton was the owner in fee of fourteen acres of land in Plymouth township, Luzerne county. In that year, by a lease duly recorded, she granted all the coal underlying the tract, with the right to mine and remove the same, to the defendant, the Delaware, Lackawanna & Western Railroad Company. Uriah Beacham became, and is now, the owner of the surface. As said in Powell v. Lantzy, 173 Pa. 543, after the severance, the two "estates were distinct and the division was as complete as if it had been made by lines on the surface. They were separately the subjects of possession, enjoyment, incumbrance and taxation. There was no community of interest between the owners." After the lease the taxing authorities were required to levy their taxes according to

the ownership and value of the surface and coal respectively, and Mrs. Horton was liable for the taxes on the surface and the defendant company was primarily liable for the taxes on the coal: Sanderson v. Scranton, 105 Pa. 469. In 1897 and 1898 the surface was assessed to Beacham, and he paid the taxes on it for those years. In the year 1897 there are contained in the assessor's book of Plymouth township the following entries: Under the heading "Names of taxables," etc., is the name "Mrs. Sarah Horton;" under the heading "Description of real estate .... street, adjoining owner," is the word "Flats;" and under the heading, "Seated lands improved and unimproved—Number of acres of coal only—acres" are the figures "14." No other or further description is given in the assessment. The assessor's book for 1898 contains substantially the same entries. Mrs. Horton had been dead more than nine years and, as will be observed, a severance of the surface and the mineral estate had taken place fifteen years prior to that time. During that period the title to the coal under the fourteen acres was in the Delaware, Lackawanna & Western Railroad Company. The insufficiency of the description of the premises assessed is shown by the return of the collector who, although presumably familiar with the real estate of the township, certifies under oath that he could not find the property assessed.

In the tax collector's return for 1897 there appear in the column headed "owner" the name "Mrs. Sarah Horton Estate," and in the column headed "Quantity and description of the property," etc., the words, "Kingston Flats cannot find." In the collector's return for 1898 the name "Sarah Horton" appears under the word "owner," and the word "Flats" appears under the head of quantity and description of property. Pursuant to these returns, the property therein returned was sold by the treasurer to the commissioners of Luzerne county as "a tract of seated land containing one-sixth of fourteen acres, situated in the township of Plymouth, county of Luzerne, assessed to Mrs. Sarah Horton." The property was subsequently sold by the commissioners to Mrs. Norris under the description of "a certain lot, piece or parcel of land, situated in the township of Plymouth, in the county of Luzerne, and commonwealth of Pennsylvania, containing one-sixth interest

in fourteen acres." It is under this tax title that the plaintiffs claim to recover in this action "an undivided one-sixth of all the coal and other minerals in, upon, and underlying all that certain piece or parcel of land situate in the township of Plymouth, county of Luzerne . . . . containing fourteen acres, one hundred and nine and five-tenth perches."

The record as thus given shows that the coal assessed to Mrs. Horton was not returned or sold under these tax proceedings. It may be assumed that the collector intended to return the coal which was assessed for the nonpayment of the taxes, but he failed entirely to do so. The property returned by the collector was for the year 1897, "Kingston Flats cannot find;" and for the year 1898 the "Flats." These descriptions cannot be construed in any way so as to include "coal only" which was assessed and which it has been assumed was returned by reason of the nonpayment of taxes. It appears by the opinion of the learned trial judge that in the Wyoming Valley there is a large body of land known as the "Kingston Flats," or simply as the "Flats." If we assume that the property returned is a part of this large body of land, what part of it and where is it located? Do the names given in the returns describe the tract in fee, the surface, or the coal? They might mean the first or the second, but certainly could not mean "coal only." From this return, therefore, it is apparent that neither the owner, the collector, nor the public could determine what property was intended to be returned for the payment of taxes. The description would apply more nearly to the surface owned by Mr. Beacham which was severed from the coal fifteen years prior thereto than it would to the coal. It could reasonably be applied to mean the surface as distinguished from "coal only" in view of the fact, known to the owner of the coal, of the prior severance of the two estates. We are of opinion that the returns of the property by the collector for the years 1897 and 1898 on which the sale in this case was made to the plaintiff were wholly insufficient and inadequate as a description of "coal only" which was assessed for the years 1897 and 1898, and for that reason that the sale to the plaintiff conveyed no title to the coal for which this action was brought.

On the trial of the cause the collector was called as a witness

and he testified that he went to Mrs. Horton's late residence and was told that the heirs had sold the coal, that he made no inquiry to ascertain the name of the owner, and that he made no demand on the owners of the coal for the taxes. By the proviso to section 41 of the Act of April 29, 1844, P. L. 486, 2 Purd., 12th ed., 1994, it is enacted " that no sale shall be made of such lands . . . . until the owners . . . . shall have refused or neglected to pay the taxes aforesaid for the space of two years." It is, therefore, a statutory prerequisite to the validity of a tax sale of seated land that there be a prior demand by the collector for the payment of the taxes. This we have distinctly ruled, and that the collector proceeding against the land without such demand is a trespasser: Kean v. Kinnear, 171 Pa. 639. Here, the collector totally disregarded his duty in not ascertaining the owner of the coal and demanding of him the payment of the taxes. The defendant company, as we have seen, had for fifteen years been the owner of this coal. During the same time the title to the surface was in another party. From the fact that " coal only " was assessed it is obvious that the assessor knew there had been a severance of the estates and that the title to the coal was in another than the owner of the surface. It is to be inferred, therefore, that a simple inquiry by the collector from almost any person in the community, familiar with the premises, would have given him the name of the real owner of the coal. A single response from an unknown woman at the house on the premises that she did not own the coal seemed to satisfy the collector, and, disregarding his duty, he made no further inquiry. The effect of this improper conduct on the part of the collector resulted in the return by him of the coal in the name of a party who he knew was not the owner, a subsequent sale for a trifling sum, and this action of ejectment. The necessity for and importance of a demand for payment of the taxes upon the owner is well illustrated in this case. It is manifest that it would have resulted in the payment of the taxes, and prevented the subsequent expense as well as trouble to the parties concerned. At all events, the statute required this duty of the collector, and as a compliance with the statute in this respect was necessary to give validity to the sale of the property assessed, it follows that even if the other requirements of the statute had been

observed the sale must for this reason be declared invalid. The plaintiffs, therefore, cannot maintain this action.

We need not notice specially the several assignments of error. Any testimony that might have been given on the offers made could not have changed the result of the trial and established a good title in the plaintiff. It was the duty of the court below, even if it had admitted the testimony offered, to have directed a verdict for the defendants.

The judgment is affirmed.