Guthrie, Appellant, *v.* Armstrong et al.

Argued January 12, 1931. Before FRAZER, C. J., WALLING, SIMPSON, SADLER, SCHAFFER and MAXEY, JJ.

*Charles F. C. Arensberg,* of *Patterson, Crawford, Arensberg & Dunn,* with him *Ella Graubart,* for appellant.—The right of Francis S. Guthrie, as a taxpayer of Allegheny County, to bring a bill in equity to enjoin the payment of public money under an illegal contract, is well established: Page v. King, 285 Pa. 153; Carroll v. Phila., 183 Pa. 55; Wolff Chemical Co. v. Phila., 217 Pa. 215.

The failure of the Poole Engineering & Machine Co., the successful bidder, to file the certified statement required by section 13 of the specifications, and the waiver by the county commissioners of this requirement, ren-

dered the award of the contract to the Poole Engineering & Machine Co. void: Page v. King, 285 Pa. 153; Flinn v. Phila., 258 Pa. 355; McIntyre v. Perkins, 9 Phila. 485; Harris v. Phila., 283 Pa. 496; Louchheim v. Phila., 218 Pa. 100.

The failure of the Poole Engineering & Machine Co., the successful bidder, to make an actual demonstration of a serviceable machine, built to meet the requirements of the specifications, to the county commissioners, and the waiver by the county commissioners of this requirement, rendered the award of the contract to the Poole Engineering & Machine Co. void.

The bond given by the successful bidder was not a bond for the faithful performance of the contract, but was discharged by the delivery of machines made in accordance with the specifications.

The wide departure of the terms of the contract from anything set forth in the specifications, invalidates the award to the Poole Engineering & Machine Co.: Page v. King, 285 Pa. 153.

*Oliver K. Eaton,* with him *Mortimer B. Lesher* and *H. D. Hirsh,* for appellees.—It may well be argued that the State, having approved certain types of voting machines, its subordinate agency, the county, could not so restrict bidders as to exclude a firm whose machine had been approved, by adding a condition not expressed in the act of assembly: Harris v. Phila., 283 Pa. 496; Front Drove Motor Co. v. Pittsburgh, 63 Pitts. L. J. 409.

There is no presumption that the county commissioners did not do their duty, if such it was, in this respect; on the contrary, the presumption is, lacking evidence to the contrary, that they did do their full duty in the premises: Hibbs v. Arensberg, 276 Pa. 24.

In construing the bond, the agreement and the proposal, due regard must be had to the position of the parties, the objects they had in view, and the circumstances surrounding and connected with this transac-

tion: Parker & Wallace v. Oil Well Supply Co., 186 Pa. 294; Dixon-Woods Co. v. Glass Co., 169 Pa. 167; Trexler v. Reynolds, 232 Pa. 173.

The law is that necessary patented articles need not be advertised for proposals: Silsby Mfg. Co. v. Allentown, 153 Pa. 319; Hibbs v. Arensberg, 276 Pa. 24.

OPINION BY MR. JUSTICE SCHAFFER, February 2, 1931:

Plaintiff, a taxpayer of the County of Allegheny, filed this bill to restrain the defendants, its county commissioners, controller and treasurer, and the Poole Engineering & Machine Company, from carrying out a contract entered into between the commissioners and the corporation named for the purchase of voting machines. The court dismissed the bill and plaintiff has appealed.

There are four objections raised to the contract. As two of them in our view are fatal to its fulfillment, we need not consider the others. The specifications called for the furnishing and delivery of one thousand, more or less, voting machines of a kind or kinds approved by the secretary of the Commonwealth. The machines of the Poole Engineering Company had been so approved. The specifications also provided that the successful bidder, for a period of five years, without cost to the county, should make good by repair or replacement any imperfections or defects in the machines. They stipulated that the bidder, to whom the contract should be awarded, must furnish a bond with surety in the sum of $100,000 conditioned for the faithful performance of the contract, on a form prepared for the purpose which could be obtained at the office of the county commissioners. The bidding form attached to the specifications contained this language, "Having examined the plans and specifications for the furnishing and delivery of the said voting machines in the office of the purchasing department of the board of county commissioners, and the agreement to be entered into in case of award of contract to [the bidder] do hereby propose and agree to furnish all the

requirements of the specifications necessary to complete the above named contract, in strict accordance with the plans, specifications and instructions of the purchasing agent, at the following prices." No form of agreement had been prepared by the public authorities in advance of the bidding and bidders did not know what the exact terms of the contract were to be.

The contract entered into contains the sixth paragraph as it appears in the reporter's notes. This provides that if the voting machines shall become unsuitable or unsatisfactory, the engineering company, upon the request of the public authorities, will sell and deliver in replacement of the machines sold, any new improvements or different voting machines then being manufactured or sold by the company, and which may be selected by the commissioners, at the then market price, and will credit upon such purchase price the fair value of the machines replaced thereby, and will accept return of the machine at such fair value. In determining the fair value or price of each machine so returned, the ability of the seller to dispose of it, the existence of a market for it and the expense of preparing it for resale and the price that can be obtained on resale shall be controlling and in case there is no market for any one or more returned machines, the value of them as raw material and the ability of the contractor to use the parts of machine or machines so retaken in manufacture and construction of new machines shall be controlling. It sets forth that if the company shall thereafter improve its voting machines, it will, on request of the public authorities, alter the voting machines sold up to the standard of such improvements, at a fair cost to the county, provided such machines are fairly susceptible of alteration and improvement. Bidders did not know that this provision was to be inserted in the contract. It is so manifestly outside of the specifications which were submitted to them and beyond the terms of the bidding form furnished, which contemplated a form of contract

then in existence, that it cannot be said that bidders were on an equality. Under the terms of this paragraph of the contract, it would seem that the seller of the machines was placed in a most advantageous position with the county, not only as to the machines sold, but as to those to be furnished in the future. If the machines originally furnished were unsatisfactory, it might have the opportunity to replace them at the then market price, perhaps without further advertising for competitive bids, and to credit upon the purchase price the fair value of the original machines, with determinance of fair value greatly to the advantage of the seller. This provision of the contract furthermore looked to the alteration of the voting machines sold if improvements should be made in them, without calling for bids. When it is taken into account that the contract involves an expenditure of more than a million dollars of public money and is without limit as to the subsequent expenditures under the paragraph mentioned, we are not prepared to say that it meets the requirements which the law has placed about the awarding of public contracts. We are forced to the conclusion that the wide departure of the terms of the contract from anything set forth in the specifications invalidates it. If such provisions as those quoted were to be placed in the contract, an opportunity should have been given to all bidders to inspect its form before making their bids. The term "lowest bidder" implies a common standard under which all bids may be received: Mazet v. Pittsburgh, 137 Pa. 548; Edmundson v. Pittsburgh School Dist., 248 Pa. 559. To introduce such provisions into the contract after an award might open a very wide avenue for future improprieties. We said in Page v. King, 285 Pa. 153, 159, "The contract and specifications on which any letting is made should be lodged with the secretary of the Commonwealth, accessible to all persons who wish to bid for the work; copies should also be furnished on application." This same rule should apply to county authori-

ties in awarding contracts. The form of the contract is often as vital as anything involved in the transaction, and unless bidders are on an equality as to knowledge of its proposed provisions, there may be a great advantage to a bidder who has a certain understanding with which the public authorities may agree, over a bidder whose understanding is otherwise. The Act of May 2, 1929, P. L. 1278, section 348, at page 1324, provides, "No contract shall be made, nor the payment thereof certified, by the controller for over three hundred dollars, unless made with the lowest and best bidder, after due notice to be published by the controller when directed by the commissioners, if he approves the purpose of the proposals invited." The purpose of the statute can be properly carried out only if all bidders know the terms of the contract which they will be required to enter into. It might be that under a possible construction of the paragraph of the contract we are considering, the county need never readvertise for any new machines, but can buy such new or different machines as may be desired in the future at the so-called market value fixed by the Poole Engineering Company for any machines which it is then manufacturing. We can well imagine that if it had been known by bidders that such provisions were to be inserted in the contract it might have had a great effect on the price submitted by them. Without having the terms of the contract before them, bidders were not on a common basis in their proposals. The defendants admit in their answer that no form of agreement was submitted until after the contract was awarded.

We are also of opinion that the bond furnished by the successful bidder did not comply with the specifications. The form of the bond was not submitted until after the award of the contract and was never available for bidders' inspection. A glance will show that it does not conform to the specifications. They provide that the bidder to whom the contract is awarded shall furnish a bond in the sum of $100,000 "conditioned for the faith-

ful performance of the contract." The condition of the bond which was furnished is not for the faithful performance of the contract, but it recites "the condition of the above obligation is such that, if the said Poole Engineering & Machine Company shall furnish or cause to be furnished the following: One thousand (1,000) voting machines, more or less, in accordance with specifications and agreement of even date herewith, then this obligation to be void; otherwise to be and remain in full force and virtue." It is open to the construction that it will be discharged by delivery of the machines. Not only does it fail to meet the specifications in the respect that it is not conditioned for the faithful performance of the contract, but specifically it does not protect the county in requiring service and repair for a period of five years as required by the specifications.

We conclude that in the two respects mentioned the contract was improperly entered into.

The decree of the court below dismissing the bill is reversed and the bill is reinstated, with directions to the court below to issue an injunction as therein prayed for; costs to be paid by the County of Allegheny.