The Conduit and Foundation Corporation *v.* City of Philadelphia, The Water Department of the City of Philadelphia, and Carmen F. Guarino, Water Commissioner. City of Philadelphia and Carmen F. Guarino, Appellants.

The Conduit and Foundation Corporation *v.* City of Philadelphia, The Water Department of the City of Philadelphia, and Carmen F. Guarino, Water Commissioner. Colanero Contracting Company, Appellant.

Argued September 27, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, BLATT, DISALLE and CRAIG. Judges ROGERS and MACPHAIL did not participate.

*John M. McNally, Jr.,* First Deputy City Solicitor, with him *Sheldon L. Albert,* City Solicitor, *Marilyn Z. Kutler,* Assistant City Solicitor, and *Sally J. Bellet,* Assistant City Solicitor, for City of Philadelphia, Water Department and Carmen F. Guarino, Water Commissioner.

*Peter Hearn,* with him *Edith G. Laver,* and *Pepper, Hamilton & Scheetz,* for The Conduit and Foundation Corporation.

*Leonard B. Rosenthal,* with him *William F. Coyle, Albert Momjian,* and, of counsel, *Abrahams & Loewenstein,* for intervenor, Colanero Contracting Co.

OPINION BY JUDGE CRAIG, April 12, 1979:

On May 27, 1977, Defendant, the City of Philadelphia, advertised for bids for "general construction work and furnishing and installing mechanical equipment and piping for additions to Mingo Creek Stormwater Pumping Station and appurtenant work. . . ." Part of the special specifications in the proposal, as advertised, required that each bidder:

Fill out and furnish in detail in the space provided, at the time of filing of the bids, the make, type and other information necessary to identify equipment and material which has been used by him as a base bid for the various items of work. All equipment and material listed and described, shall comply with the requirements of the specifications. The City reserves the right to reject the proposal of any bidder who fails to comply with this requirement or who fails to immediately supply additional information requested by the City. No contract award shall be made until all necessary information has been submitted.

Appellant-Intervenor Colanero Contracting Company (Colanero) was the lowest bidder; The Conduit and Foundation Corporation (Conduit) was the next lowest. Like all the other bidders, Conduit listed only one make and supplier for a pump and a motor, the two categories where a special designation was requested; Colanero listed alternative suppliers in both.

The same day that the bids were opened, the city's Deputy Water Commissioner telephoned Colanero's president and requested that he designate the supplier

that he intended to use. At that time, he at least specified the supplier of the pumping apparatus, and the suppliers of the pump and the motor were confirmed by letter received two days later.

Conduit filed a complaint in equity and requested a preliminary injunction to prevent the city from awarding the contract to Colanero and to enjoin permanently the city from awarding the contract to any bidder other than Conduit. The court below, after hearings, determined that the bidding was not competitive because only Colanero listed multiple subcontractors and the city allowed it to narrow the list to one supplier after the formal opening of the bids. The court therefore issued a decree permanently enjoining the city from awarding the contract to anyone other than Conduit. The city and Colanero have appealed.

Preliminarily, both appellants raised the issue of Conduit's standing to maintain the instant action. Conduit pays taxes in Philadelphia. It is clear that a taxpayer has standing to enjoin the award of a public contract to anyone other than the lowest responsible bidder and it does not matter that the taxpayer is also a disappointed bidder. *Lutz Appellate Printers, Inc. v. Department of Property and Supplies*, 472 Pa. 28, 370 A.2d 1210 (1977). Neither is Conduit's standing negated simply because it also seeks to have the contract awarded to itself.[1] *Lutz Appellate Printers, Inc., supra.* As a taxpayer, having an interest in pub-

---

[1] Because Conduit is alleging a breakdown in the competitive bidding process and the relief it requests necessarily in part includes enjoining the award of the contract to the company it alleges had an unfair advantage in the bidding, it cannot be said that Conduit's vindication of the public interest is only incidental as in *R. S. Noonan, Inc. v. School District of The City of York*, 400 Pa. 391, 162 A.2d 623 (1960) where the action brought by the disappointed bidder sought only to have the contract awarded to itself and damages assessed.

lic funds, it may maintain an action aimed at preventing an unauthorized or unlawful expenditure of money. *Page v. King,* 285 Pa. 153, 131 A. 707 (1926).

The city contends that Colanero's multiple listings did not constitute a violation of the bidding requirements, or if they did, it was an informal irregularity which could be waived in the sound discretion of the city's procurement commissioner under a clause in the standard contract requirements of the city and made part of the bid documents in the case. The clause reads:

Rejection of Informal Bid—A bid which is incomplete, obscure, conditional or unbalanced, or which contains additions not called for, or irregularities of any kind, including alterations or erasures, *may* be rejected as informal. A bid which is not accompanied by the required security for the execution of contracts *shall* be rejected. (Our emphasis.)

Although it is true that the bid instructions do not expressly forbid alternative listings, it is also true that the apparent intent of the language—"to identify the equipment and material which has been used by him as a base bid. . . ."—together with another requirement that no modifications would be allowed after bid opening, makes the most reasonable interpretation seem to be that only one listing would be permitted, and that was in fact how all the other bidders understood the instruction. *See Druml Co. v. Knapp,* 6 Wis. 2d 418, 94 N.W. 2d 615 (1959). The notice at best left room for an unfair advantage to be taken by a bidder.

The determinative question then becomes whether, under the circumstances of this case, Colanero's multiple listings are such an aberration from the bid specification as to violate the applicable statutory and city ordinance competitive-bidding requirements. If

so, the irregularity in Colanero's bid would not be a mere informality waivable or correctable in the city's exercise of discretion; and the cases cited which deal with a court's interference with the discretion committed to public officials, *e.g.*, *Weber v. City of Philadelphia*, 437 Pa. 179, 262 A.2d 297 (1970); *Pearlman v. Pittsburgh*, 304 Pa. 24, 155 A. 118 (1931); *Wilson v. New Castle City*, 301 Pa. 358, 152 A. 102 (1930), would be inapposite.

As the court below found, the problem with the irregularity in Colanero's bid is that when a bidder lists subcontractors in the alternative, he is, upon being declared the lowest responsible bidder, free to accept competition for lower prices among the subcontractors or suppliers he has listed, a practice known as "bid-shopping." Moreover, this competition is often initiated by the subcontractors themselves. Such secondary bidding, after the low bidder has been declared, tends to benefit only the contractor, not the public.

Although there is no evidence that Colanero engaged in bid shopping, a problem as to the statutory requirement of open and equal competition occurs because the benefits from bid-shopping can be anticipated when a bidder intends to list several suppliers. Therefore, those benefits can be factored into the amount quoted on the submitted bid, a benefit all the other bidders reasonably believed would not be permitted in this case. Thus, the aberration in Colanero's bid is one allowing an opportunity for a *competitive advantage in preparing the bid.*

It is clear that the statutory requirements for competitive bidding, and the ordinances enacted thereunder, do not exist solely to secure work or supplies at the lowest possible price, but also have the " 'purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts . . . and are en-

acted . . . not for the benefits or enrichment of bidders. . . .' '' *Yohe v. Lower Burrell,* 418 Pa. 23, 28, 208 A.2d 847, 850 (1965), adopting 10 McQuillan, Municipal Corporations §29.29 (3rd. ed. 1950). The obvious intent of the applicable statute is thus also to '' 'close, as far as possible, every avenue to favoritism and fraud in its varied forms.' '' *Louchheim v. Philadelphia,* 218 Pa. 100, 66 A. 1121 (1907), quoting *Mazet v. City of Pittsburgh,* 137 Pa. 548, 20 A. 693 (1890). Therefore, as the *Louchheim* case illustrates, the courts will not condone a situation that reveals a clear potential to become a means of favoritism, regardless of the fact that the city officials may have acted in good faith in the particular case, which we do not doubt here.

Although we apparently have no cases in the Commonwealth that have dealt with the issue of bid-shopping or its relation to the statutory requirements of competitive bidding, we note that our Supreme Court has made the observation that " [t]here may be a great advantage to a bidder who has a certain understanding with which the public authority may agree, over a bidder whose understanding is otherwise," *Guthrie v. Armstrong,* 303 Pa. 11, 18, 154 A. 33, 35 (1931), and in *Page v. King,* "if bidders are mislead by anything which the . . . [public authorities] may have done, or the notice may have required, the bidding was not on a common basis; the lowest figure submitted would not in law, be the lowest bid, because it lacked fair competition." 285 Pa. at 157, 131 A. at 708-09.

Because the city's specifications have led the bidders to believe that only one listing would be permitted, and the city then accepted the low bid from the only bidder who made alternative listings, we believe that the case falls, by analogy, under the line of cases raising the issue, not as to the city's discretion, but as to whether a bidder had a competitive advan-

tage in preparing his bid because of the city's incomplete or misleading bid specifications or the city's having negotiated after the formal bid-opening. *See Guthrie v. Armstrong, supra; Page v. King, supra; Zimmerman v. Miller,* 237 Pa. 616, 85 A. 871 (1912); *Louchheim v. Philadelphia, supra; Mazet v. City of Pittsburgh, supra.*

Therefore, we agree that Colanero's multiple listing of subcontractors deprived this bidding of the statutory requisite of open compensation, and was thus not such an irregularity as could be waived in the city's discretion.[2]

The city cites an opinion by the Comptroller General, *Cummings and Sellers,* 40 Comp. Gen. 688 (1961), to the effect that the state will not interfere with bid-shopping and that bid-shopping is not a legal basis to reject a bid if the specifications are otherwise met. We do not here decide so broad a policy question. We are not holding that bid-shopping or the potential to bid-shop is necessarily against the public interest in

---

[2] In relying heavily upon *Harris v. Philadelphia,* 283 Pa. 496, 129 A. 460 (1925), the city's argument implies that, aside from a failure to furnish the required security, which falls under the mandatory rejection language in the clause quoted above from the standard contract requirements, other kinds of bid aberrations necessarily fall within the informal and waiveable irregularities sentence of that clause. We cannot agree, either that *Harris* sets up such an absolute dichotomy, or that any aberration from the specification which does not relate to security for the performance of the contract is within the city's discretion to accept or reject.

The lone case expressly decided on the basis of a "waiveable irregularity," *Cain v. Winter,* 72 D. & C. 2d 64 (1975), is inapposite because there the court found that the specifications fairly notified the potential bidders that the city might exercise discretion to award the contract item by item or as a package and that the failure of the favored bidder to itemize merely indicated that its bid should not be considered if the city decided to award the contract item by item. No issue was raised as to a competitive advantage in the preparation of the bid.

every case. We simply conclude that where only one bidder, the lowest, has been left the potential to reap the benefits of bid-shopping, then it cannot be said that all the bidders competed on a fair and open basis.

The parties also hold divergent views on the final issue we must address—the propriety of that part of the decree that enjoins the award to anyone other than Conduit.

Section 8-200(2)(b) of the Philadelphia Home Rule Charter contains a proviso that "[t]he Department may reject all bids if it shall deem it in the interest of the City to do so," and all bidders had notice of this reserved discretionary power. Absent evidence of fraud or collusion, our courts have consistently upheld the rejection of all bids and readvertisement for new bids by public officials in the exercise of their informed discretion to decide that it is in the best interest of the public to do so. *Weber v. City of Philadelphia,* 437 Pa. 179, 262 A.2d 297 (1970); *Highway Express Lines, Inc. v. Winter,* 414 Pa. 340, 200 A.2d 300 (1964); *R. S. Noonan, Inc. v. School District of City of York,* 400 Pa. 391, 162 A.2d 623 (1960); *Straw v. Williamsport,* 286 Pa. 41, 132 A. 804 (1926); *Ameri. Pavement Co. v. Wagner,* 139 Pa. 623, 21 A. 160 (1891). In the present case, we are given no indication of what the city intends to do in the event that it cannot lawfully accept Colanero's bid. Consequently, it would be an unwarranted interference with municipal discretion for us to cut off the city from its legally reserved option to reject all bids. *See Louchheim, supra.*

*R & B Builders, Inc. v. School District of Philadelphia,* 415 Pa. 50, 202 A.2d 82 (1964) does not require a contrary result because there it was clear that the public authority did not intend to exercise its discretion to reject all bids.

Therefore, the decree will be modified so as to limit its effect to the enjoining of the city from entering into the contract with Colanero.

### Order

And Now, this 12th day of April, 1979, the Decree of the Court of Common Pleas of Philadelphia County at No. 3426, June Term, 1977, permanently enjoining the City of Philadelphia and Carmen F. Guarino, Water Commissioner, from awarding the contract for additions to the Mingo Street Stormwater Pumping Station and appurtenant work to any contractor, person or business concern other than the Conduit and Foundation Corporation, is hereby modified to enjoin said city and Carmen F. Guarino, Water Commissioner, from awarding said contract to the Colanero Contracting Company pursuant to its bid opened on the 18th day of June, 1977.

---

Concurring and Dissenting Opinion by Judge Wilkinson, Jr.:

I concur with the majority opinion insofar as it affirms the decision of the Common Pleas Court for I would affirm the entire Decree. In my opinion, the abuse to be avoided by rejecting this bid will not be avoided if the next lower bidder does not receive the contract. I cannot bring myself to believe that the City of Philadelphia, absent fraud, collusion, bad faith or arbitrary action can now exercise its right to reject and perhaps rebid today a contract on which it received a $2,288,340 bid in June of 1977.