**HANOVER AREA SCHOOL DISTRICT, Plaintiff,**

v.

**SARKISIAN BROTHERS, INC. and The Travelers Indemnity Company, Defendants.**

Civ. No. 79–154.

United States District Court, M. D. Pennsylvania.

Jan. 12, 1981.

Anthony C. Falvello, Sugarloaf, Pa., Michael J. Hudacek, Plymouth, Pa., for plaintiff.

Kenneth Cushman and Kenneth I. Levin, Philadelphia, Pa., Donald H. Brobst, Wilkes Barre, Pa., for defendants.

## MEMORANDUM AND ORDER

### I. BACKGROUND

NEALON, Chief Judge.

This case involves an attempt by the Hanover Area School District ("District") to recover liquidated damages upon a bid bond executed by Sarkisian Brothers, Inc., and the Travelers Indemnity Company.[1] The operative facts date to the summer of 1977. At that. time, the District solicited sealed bids for the construction of a junior-senior high school in Hanover Township, Pennsylvania. Special instructions were issued for the submission of all proposals.[2] The District announced that it would divide erection of the school into six different facets: (1) General Construction; (2) Heating, Ventilating, and Air Conditioning; (3) Plumbing and Drainage; (4) Electricity; (5) Kitchen Equipment; and (6) Resilient Floor Covering and Carpet. Potential contractors were informed that bids were to be submitted with regard to these specific categories.

Sarkisian competed for the right to carry out the General Construction and offered to perform the job for $5,745,000.00.[3] The builder enclosed a bid bond underwritten by Travelers which protected the District against losses incurred through breach of the promulgated instructions. The bond provided up to $287,250.00 in indemnification in the event that Sarkisian reneged after acceptance of the bid.[4] On September

---

1. Subject matter jurisdiction rests on diversity of citizenship. 28 U.S.C. § 1332. Sarkisian and Travelers are respectively incorporated in New York and Connecticut. The District, of course, is a citizen of Pennsylvania. This action was originally filed in the Court of Common Pleas for Luzerne County. The defendants removed the litigation to this court on February 5, 1979.

2. Relevant portions of these instructions are contained in Exhibit B, Document 45 of the Record.

3. *See* Exhibit A, Document 45 of the Record.

4. A copy of the bid bond is attached to the original complaint filed in the Court of Common Pleas. *See* Exhibit A, Document 1 of the Record. The sum $287,250.00 is five percent of the $5,745,000.00 proposal Sarkisian gave for the construction.

20, 1977, the District adopted a resolution which identified the contractors who had made the lowest offers in each of the six categories. This list included Sarkisian under the designation "General Construction." The resolution also stated:

> *Section 5.* The School District hereby declares its intent to award the several contracts for the construction of the School to the respective apparently lowest responsible bidders named in Section 4 hereof and the Architect is hereby authorized and directed to give notice, on behalf of the School District, to each of such bidders of such intent to award and, pursuant to the Public Works Contractors' Bond Law of 1967, to direct each such bidder to submit the Performance Bond and Payment Bond required under the terms of the bidding.[5]

Apparently, the other contractors complied with these terms and reached satisfactory arrangements with the District. Sarkisian, however, experienced difficulties which ultimately resulted in litigation.

Problems arose with the formalization of the final agreement. R. J. LaChance, Sarkisian's General Manager for the Northeast Region, informed the District on two separate occasions that his company could not obtain the requisite performance and payment bonds until a binding contract was finalized or, at least, scheduled for signing.[6] District Solicitor John Doran claims that in a phone conversation on October 27, 1977, he told a representative of Sarkisian that the closing would occur around the ninth or tenth of November.[7] The parties, nevertheless, did not draw up a final contract, and Sarkisian failed to secure the necessary bonds. Significantly, the instructions regulating the bidding provided that all proposals were to remain in effect for sixty days beyond August 30, 1977, the date of submissions. On October 16th, the District's Architect asked Sarkisian to hold its bid until November 15th, at which time a contract would be awarded and signed.[8] That date, of course, was fifteen days beyond the stated deadline. The construction company replied that such an extension would probably be impossible due to "estimated costs from subcontractors and anticipated increases in general condition costs."[9] Ultimately, the entire transaction collapsed. The District invited a new round of bids for the General Construction of the school. The Sutter Corporation received the award.[10] In January 1979, moreover, the School District filed the instant lawsuit. A defense motion for summary judgment is presently before the court.

## II. CONTENDING CHARACTERIZATIONS

The material facts of this litigation are not contested. The two sides, nevertheless, portray the underlying controversy much differently. Selection of the proper characterization is the key to resolution of the matter.

In the opinion of the complainant, the defendants simply defaulted on the bid bond. The District contends that the "preliminary declaration" of intent to award the project to Sarkisian obligated the builder to enter a final contract. The construction company's failure to adhere to this duty supposedly forfeited the security that pro-

---

5. *See* Exhibit C, Document 45 of the Record. The District notified Sarkisian of the Resolution by mail. *See* Exhibit D, Document 45 of the Record.

6. On September 29, 1977, LaChance sent a letter to District Architect Ettore Lippi stating that Sarkisian's surety would not provide coverage until a contract was "issued and executed." *See* Exhibit E, Document 45 of the Record. Twelve days later, LaChance asserted that the bonding could be obtained if an "actual date" for the contract were "set." *See* Exhibit F of the Record.

7. *See* Document 40 of the Record at 45–47.

8. *See* Exhibit G, Document 45 of the Record.

9. *See* Document H of the Record.

10. Sutter's bid amounted to $6,047,900.00 or $302,900.00 more than Sarkisian's. On this basis, the plaintiff claims the right to all $287,250.00 in liquidated damages authorized by the bid bond.

tected the District against improprieties during the period between submission of proposals and finalization of agreements.

Travelers and Sarkisian, conversely, note that the instructions the plaintiff issued for submission and acceptance of the bids contained the following terms:

*Execution of Contract*

19. The School District will notify the successful bidder by mail. This letter awarding the contract subject to the successful bidder complying with the requirements of the "Public Works Contractors Bond Law of 1967", will contain instructions and enclosures for the proper execution of the contract documents, bonds and insurance.

Bond and insurance requirements are found in Sections 5 and 6 of the "Conditions of Contract". Said bonds and insurance shall be issued by Companies legally authorized to conduct business in the Commonwealth of Pennsylvania and which are acceptable to the School District.

When applicable, the successful bidder shall also deliver to the Hanover Area School District at the time of execution of the contract a cost breakdown for rough grading and sanitary sewage.

20. All contract documents must be returned to the School District, properly executed, within ten (10) days of receipt of the award letter. No proposals or awards shall be considered binding upon the School District unless and until the contract documents, required bonds, and required certificates are properly executed and returned.

*Failure to Execute the Contract*

21. If the lowest responsible bidder to whom the contract is awarded fails to give bonds or execute the contract within the time specified in the proposal, the amount of the proposal guaranty shall be forfeited to the School District not as a penalty, but as liquidated damages.

The District did not adhere to the method outlined in Paragraph 19 for awarding contracts. The defendants insist that this deviation from the procedure for the bidding,

precludes any default on the bond. Analysis of the facts indicates that this theory is correct. Travelers and Sarkisian shall be granted summary judgment.

## III. PREREQUISITES TO FORFEITURE

The defendants place heavy reliance on *Travelers Indemnity Company v. Susquehanna County Commissioners*, 17 Pa. Cmwlth. 209, 331 A.2d 918 (1975). In that case, a county government solicited sealed bids for a courthouse improvement plan. The proposals were accompanied by bonds guaranteeing the Commissioners liquidated damages in the event that a contractor received an award but failed to execute a contract. Bids could not be withdrawn until thirty days after their opening. Furthermore, the instructions for the submission of proposals said that acceptance of all awards would occur in writing. Difficulties developed when the county officials deviated from the established procedures. The Commissioners selected a lowest bid, but failed to forward the written notice required by the instructions. The builder, who apparently had a representative present when the Commissioners made the award, contacted the engineering firm retained by the county. Unfortunately, the parties never agreed to a final contract, and the builder requested relief from its bid. The Commissioners accepted the next-lowest offer and sued the first builder's surety. The Commonwealth Court ruled for the defendant.

■ Speaking for a unanimous panel, Judge Blatt recognized that under Pennsylvania law a contractor normally may not withdraw a proposal without forfeiting its security. This principle is known as the "firm bid rule." Yet Judge Blatt also noted that such a default cannot occur until "the conditions for bond forfeiture . . . fully ripen." 331 A.2d at 920. In *Susquehanna County*, the plaintiff did not prevail for the following reasons:

The conditions of forfeiture are included in the instruction to bidders, all of which, of course, form a material part of

the contract between the parties. Compliance, therefore, is necessary for the enforcement of rights and obligations arising thereunder. *In the instant case, forfeiture could not take place unless the bidder either withdraws his bid within 30 days after the bid opening or refuses to execute and deliver the contract documents within ten days after receiving written notice of acceptance.* Here there is no indication that these conditions of forfeiture had actually ripened. Rudy merely requested to withdraw its bid, a request which the Commissioners apparently misidentified as an actual withdrawal. The Commissioners, therefore, mistakenly failed to notify Rudy of the acceptance and failed to present the company with the contract papers for execution and delivery. Thus, it is impossible to determine now whether or not Rudy, if put to the test by the Commissioners, would have undertaken the project as the company was obligated to do. Instead, the contract was awarded to another bidder.

However, inadvertent their actions may have been, the Commissioners did not perfect their right to collect on the forfeiture of the bid bond. Accordingly, the decision of the court below must be reversed. [emphasis added, citations omitted]

*Id.*

Application of this logic undermines the District's position. As Judge Blatt explained, Sarkisian could have defaulted on the bond in only two ways. The first, premature withdrawal, is out of the question. The record demonstrates that Sarkisian honored its proposal throughout the mandatory sixty-day period. The District, therefore, claims that the builder violated an obligation under the bid procedure to execute the contract and to deliver the necessary bonds after receipt of the tentative acceptance. Counsel for the plaintiff,

moreover, attempt to distinguish *Susquehanna County* on the ground that Sarkisian received written notice of the preliminary award.[11] This contention is not persuasive.

A review of the *Susquehanna County* opinion indicates that the decision did not turn merely on the absence of written notice. On the contrary, the defendant prevailed because the plaintiff failed to adhere to the instructions governing the contract. According to the designated procedure, written notice was a prerequisite to any award that would obligate the builder to finalize the agreement. Judge Blatt, however, stated that the county government also had a duty "to present the contract papers for execution and delivery." *Id.* The plaintiff fulfilled neither of these steps, *both* of which were required by the instructions to bidders. Thus, the builder had no duty to sign a contract or obtain additional bond coverage. *Id.*

■ As previously quoted, Paragraph 19 of the bid instructions issued in the instant litigation required the District to forward the successful bidder a letter which would: (1) be sent by mail; (2) award the contract subject to the builder's compliance with the duty to obtain performance and payment bonds, and (3) "contain instructions and enclosures for the proper execution of the contract documents, bonds and insurance."[12] The first two of these steps were followed. The third was violated. Clearly, the bid instructions envisioned a scheme in which the District would supply the selected builder with all of the documents necessary to finalize the transaction. Under Paragraphs 20 and 21, the successful bidder would then have ten days to execute the papers or default on the bid bond. The September 20th resolution, nonetheless, sought to change this procedure. In *Susquehanna County*, Judge Blatt held that all instructions to bidders "form a material part of the contract" and must be followed

---

11. *See* the letter of Ettore Lippi to Sarkisian Brothers, Inc., dated September 21, 1977. Exhibit D, Document 45 of the Record.

12. *See* Exhibit B, Document 45 of the Record. Lippi's letter states that it contained only one enclosure, *i. e.*, a copy of the District's resolution passed on September 20, 1977. *See* Exhibit D, Document 45 of the Record.

before the "conditions of forfeiture" ripen sufficiently to justify default. The District simply did not follow these requirements and, for that reason, the defendants are free of liability.

Significantly, other Pennsylvania authorities support the strict compliance rationale of *Susquehanna County.* *Whitemarsh Township Authority v. Finelli Brothers, Inc.,* 408 Pa. 373, 184 A.2d 512 (1962), for example, involved a municipality's solicitation of proposals for the construction of a sewer system. The instructions to bidders required that all bids from corporations include the signature of a president or vice president. Finelli Brothers, Inc., submitted the lowest proposal, but failed to affix the signature of a requisite corporate officer. The municipality decided to award the contract to Finelli. Subsequently, the builder discovered that its bid was in error and attempted to withdraw. When the municipality sued to confiscate the builder's security on the basis of the firm bid rule, the Pennsylvania Supreme Court ruled for the defendant. The *Whitemarsh* majority declared that since the bid instructions were "mandatory," Finelli's failure to add an officer's signature rendered the proposal "void" as a matter of law. For that reason, the municipality was not in a position to accept the bid and could not claim default on the bid bond. *Id.* at 377–78, 184 A.2d 512.

In *Conduit and Foundation Corporation v. City of Philadelphia,* 41 Pa.Cmwlth. 641, 401 A.2d 376 (1979), the Commonwealth Court again affirmed the principle that both parties must strictly adhere to the mandated procedure for the acceptance of bids before either side can enforce an "award." The defendant in that suit solicited proposals for work on a water pumping station. The plaintiff sued to enjoin award of the contract to Colanero Contracting Company, the lowest bidder. The relevant instructions had required every contractor to list the make and supplier of the pieces of equipment intended for use in the job. All but one of the competitors designated a single make and supplier for each of the various machines. Colanero, however, named alternatives in every instance. Despite the unorthodox nature of the proposal, the defendant prepared to grant the contract to the lowest bidder. A panel of the Commonwealth Court, nevertheless, agreed with the plaintiff that the terms of the bid instructions prohibited alternative proposals. On this basis, the *Conduit* decision enjoined the defendant from granting the appointment to Colanero. *Id.* at 378–80.[13]

Of course, errors and irregularities that superficially deviate from normal practice do not taint an otherwise acceptable award if the discrepancy does not transgress the actual terms of the relevant instructions. For instance, the ground rules promulgated in *R. & B. Builders, Inc. v. Philadelphia School District,* 415 Pa. 50, 202 A.2d 82 (1964) demanded that each contractor submit a bid bond "equal to at least 25% of the total bid." R. & B. Builders, Inc., presented the lowest proposal but failed to specify an exact penal sum on the bond. The School Board refused to accept the bid on the basis of the omission, and litigation ensued. In a unanimous opinion, the Pennsylvania Supreme Court noted that the absence of a specific penal sum did not invalidate the bond. Indeed, the error extended the surety's liability beyond the twenty-five percent minimum to the full extent of any injury suffered by the School Board. On this basis, the court held that "R. & B. had sufficiently fulfilled every condition stipulated" in the instructions. *Id.* at 53, 202 A.2d 82. The School Board was prevented

---

**13.** Other precedents that recognize the binding effect of designated bid procedures include *Colella v. Allegheny County,* 391 Pa. 103, 107, 137 A.2d 265 (1958) (instructions form a "material part of the contract between the parties") and *Nielson v. Womer,* 46 Pa.Cmwlth. 283, 406 A.2d 1169, 1171 (1979) (". . . specifications set forth in a bidding document are mandatory and must be strictly followed for the bid to be valid"). *See also American Totalisator Company, Inc. v. Seligman,* 489 Pa. 568, 414 A.2d 1037, 1041 (1980). ("As the Commonwealth failed to abide by the terms of its own request for a proposal, it lacked, in our view, any discretion to award the instant contract . . .").

from awarding the contract to any other builder. *Cf. Hatalowich v. Redevelopment Authority of Monessen*, 454 Pa. 481, 484–88, 312 A.2d 22 (1973).

Yet there is no *de minimis* exception with regard to irregularities which violate the fixed procedures for bidding. A good illustration of this principle is *Harris v. Philadelphia*, 283 Pa. 496, 129 A. 460 (1925). There, the defendant solicited bids for the construction of a subway line. The rules for submitting proposals were set by statute, ordinance, and published instructions.[14] Each builder was required to provide security in the form of a certified check amounting to five percent of the total offer. The plaintiff presented the lowest bid, but unfortunately enclosed a check slightly below the minimum amount. The error apparently sprang from a misinterpretation of the bid instructions. In light of this discrepancy, the defendant rejected the proposal and the parties went to court. The plaintiff contended "that the irregularity was, at most, a technical one" which could readily be cured with a supplemental check covering the shortfall. The complainant also pointed out that the sum already provided amounted to more than the difference between the lowest and second lowest bids, and therefore sufficiently insured the defendant against any injury that could occur due to the builder's failure to enter a final contract. The Pennsylvania Supreme Court found this rationale unpersuasive and declared the bid invalid on the basis of the deviation. *Id.* at 500–09, 129 A. 460. *See also McIntosh Road Materials Company v. Woolworth*, 365 Pa. 190, 203–04, 74 A.2d 384 (1950); *Conduit and Foundation Corporation v. City of Philadelphia*, 41 Pa.Cmwlth. 641, 401 A.2d at 380 n.2.

■ In view of these authorities, the School District's claim must fail. The court wishes to emphasize that this decision is not an exaltation of form over substance. The doctrine mandating strict adherence to bid instructions supports a crucial policy of the Commonwealth. Laws that require competitive bidding for public projects seek to apportion awards fairly and economically. *See, e. g., Lutz Appellate Printers, Inc. v. Commonwealth of Pennsylvania*, 485 Pa. 559, 565–68, 403 A.2d 530 (1979); *Louchheim v. Philadelphia*, 218 Pa. at 102–04, 66 A. 1122. Mandatory compliance with statutory procedures and bid instructions serves this goal in two ways. Initially, clear-cut ground rules for competition guarantee that none of the contractors will gain an undue advantage through better information of the bid solicitor's operation. *Conduit and Foundation Corporation v. City of Philadelphia*, 41 Pa.Cmwlth. 641, 401 A.2d at 379–80. Second, the strict adherence principle lessens the possibility of fraud and favoritism. *Lutz Appellate Printers, Inc. v. Commonwealth of Pennsylvania*, 485 Pa. at 567, 403 A.2d 530; *Harris v. Philadelphia*, 283 Pa. at 503–04, 129 A. 460; *Louchheim v. Philadelphia*, 218 Pa. at 102–04, 66 A. 1122. In the opinion of the Pennsylvania judiciary, moreover, the appearance of propriety is so important that genuine deviations may not be tolerated even if all available evidence suggests that the parties acted in good faith. Accordingly, Travelers and Sarkisian must be granted summary judgment even if the District's transgression of the instructions was totally inadvertent. *Lutz Appellate Printers, Inc. v. Commonwealth of Pennsylvania*, 485 Pa. at 567–68, 403 A.2d 530; *Louchheim v. Philadelphia*, 218 Pa. at 102–04, 66 A. 1122; *Travelers Indemnity Company v. Susquehanna County Commissioners*, 17 Pa.Cmwlth. 209, 331 A.2d at 920.

## IV. FINAL ISSUES

■ The plaintiff raises two final arguments. The first centers on the fact that Pennsylvania law does not consider a contract between a bidder and a School Board to be final until it is reduced to writing. *Crouse, Inc. v. Braddock Borough School District*, 341 Pa. 497, 499–501, 19 A.2d 843 (1941); *Chilli v. McKeesport School District*,

---

**14.** Procedures prescribed by statute or ordinance, like those described in instructions, are "mandatory" and must be followed "strictly." *Harris v. Philadelphia*, 283 Pa. at 503, 129 A. 460.

334 Pa. 581, 583–85, 6 A.2d 99 (1939). *See also Construction, Inc. v. Rockwood Borough Municipal Authority*, 326 F.2d 751, 752 (3d Cir. 1964). In the view of the District, this principle establishes that no additional steps in "awarding" the appointment were possible beyond those taken by the September 20th resolution, because any acceptance was tentative at that point. But nothing in *Crouse* or any other precedent relieved the complainant from the duty to adhere to the promulgated procedures. As previously quoted, Paragraph 20 of the instructions clearly states that no award would bind the District "until the contract documents, required bonds and required certification" were properly executed and returned. Thus, the plaintiff could have complied with both the bid rules *and* the *Crouse* holding.

■ Paragraph 20 also defeats the District's final argument. The Legislature of Pennsylvania has required that public bodies make sure that all prime contractors furnish adequate performance and payment bond coverage "before jobs are awarded." 8 P.S. § 193(a). The complainant suggests that this statute prohibited the full-fledged acceptance described in Paragraph 20. This contention is incorrect. Paragraph 20 clearly provides that no award would be binding until the selected builder secured the requisite bonding. Again, the District could have followed the bid instructions without transgressing any law of the Commonwealth.[15]

---

**15.** Furthermore, the defendants could argue that Paragraph 20 would not have violated § 193(a) even if "awards" had been deemed binding "before" the builder secured performance and payment bonds. This court has declared that since the terms of 8 P.S. §§ 191 et seq., are virtually identical to those of the Miller Act, 40 U.S.C. §§ 270a et seq., federal cases interpreting the latter statute are persuasive under Pennsylvania law. *Visor Builders, Inc. v. Devon E. Tranter, Inc.*, 470 F.Supp. 911 (M.D. Pa.1978). Many such authorities hold that the failure of a builder to provide adequate bonds does not in itself invalidate a public contract. Rather, a binding agreement comes into existence. Although the private party is in breach of its obligation to provide bond coverage, the underlying contract is valid and may be otherwise enforced. *Aetna Casualty & Surety Company v. United States*, 526 F.2d 1127, 1130 (Ct.Cl.1975), *cert. denied*, 425 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976); *United States ex rel. Dover Elevation Company v. General Insurance Company of America*, 339 F.2d 194, 195–96 (6th Cir. 1964); *United States v. Pennington*, 228 F.Supp. 374, 375 (E.D.La.1964). *See also Title Guaranty & Trust Company of Scranton v. Crane Company*, 219 U.S. 24, 34-35, 31 S.Ct. 140, 142, 55 L.Ed. 72 (1910).