621 A.2d 1058

**MICHAEL FACCHIANO CONTRACTING, INC., Petitioner,**

·v.

**PENNSYLVANIA TURNPIKE COMMISSION and A. & L., Inc., a Pennsylvania corporation, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Jan. 20, 1993.

Decided Jan. 27, 1993.

Publication Ordered March 12, 1993.

Thomas A. Berret and Marny G. Leone, for petitioner.

Louis R. Martin, Chief Counsel and Mary Pamela Markey, Asst. Counsel, for respondents.

## OPINION

PELLEGRINI, Judge.

Before us is the preliminary objections of the Pennsylvania Turnpike Commission (Commission) to a Petition for Review in Equity filed by Michael Facchiano Contracting, Inc. (Facchiano) seeking to enjoin the Commission from awarding a construction contract to A. & L., Inc. (A & L) because A & L was not the lowest responsible bidder.

Facchiano alleges as follows: On July 8, 1992, Facchiano submitted a bid in the amount of $1,438,043.20 for Commission Contract No. 87–042–RB76 (Project) involving the reconstruction of two bridges on the Turnpike located in Plum Township, Allegheny County. Facchiano purportedly has been pre-qualified as a responsible bidder by PennDOT for Turnpike Commission projects. Facchiano's bid was the lowest bid submitted to the Commission by any contractor for the Project.

On September 15, 1992, the Commission rejected Facchiano's bid because Facchiano had been debarred from bidding on any federal contracts. In its letter rejecting the bid, the Commission cited Sections 102.13(a)(8) and 103.02 of PennDOT Publication 408, incorporated by reference into the Project's bid proposal, permitting the disqualification of bidders debarred from bidding on federal contracts.

Facchiano, as a taxpayer and a toll payer, not as a disgruntled bidder, alleges that he has been pre-qualified as a responsible bidder by PennDOT for Commission projects, and that Section 4 of the Act of May 21, 1937, *as amended,* 36 P.S. § 652d,[1] takes away any discretion from the Commission as to whether a bidder is "responsible" or "competent" and requires the Commission to accept PennDOT's determination of bidder eligibility. Because the Commission disqualified its bid without authority, Facchiano alleges that it was wrongly denied

---

1. Section 4 provides in relevant part:
    ... That all contracts and agreements relating to the construction of the turnpike and connecting tunnels and bridges shall be approved by the Department of Transportation, and the Turnpike and connecting tunnels and bridges shall be constructed under the supervision of the Department of Transportation ...

the awarding of Contract No. 87–042–RB76 as the lowest responsible bidder, and, as a result, will suffer irreparable harm, and asks that the award of the contract to A & L be enjoined and that it be awarded the contract.

The Commission filed preliminary objections in the nature of a demurrer that Facchiano neither had standing to maintain this action nor had it set forth a claim for which relief could be granted.[2]

## I.

## STANDING

A disappointed bidder to a public contract lacks standing to challenge its award unless because, since he has no property interest to receive the contract, he has suffered no injury that would entitle him to redress. *J.P. Mascaro & Sons, Inc. v. Bristol,* 95 Pa.Commonwealth Ct. 376, 505 A.2d 1071 (1986). To have standing, the bidder must be an aggrieved taxpayer of the jurisdiction funding the contract. *C.O. Falter Construction v. Towanda Municipal Authority,* 149 Pa.Commonwealth Ct. 74, 614 A.2d 328 (1992). If a taxpayer, the party has a cause of action requiring that bid contracts be awarded to the lowest responsible bidder. *American Totalisator Co., Inc. v. Seligman,* 489 Pa. 568, 414 A.2d 1037 (1980); *Conduit and Foundation Corp. v. Philadelphia,* 41 Pa.Commonwealth Ct. 641, 401 A.2d 376 (1979).

The Commission contends that Facchiano does not have standing to maintain this action either as a taxpayer or as a toll payer, because neither taxes nor tolls are funding the Project, but bonds purchased by numerous investors. Moreover, the Commission contends that even if tolls were being used to fund a project, a toll payer would not have standing, because tolls are not analogous to taxes in that a motorist is

2. For the purposes of a demurrer, all of the allegations contained in the Complaint and every inference fairly deductible therefrom are deemed to be admitted. *See Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick,* 526 Pa. 541, 587 A.2d 1346, *cert. denied,* —— U.S. ——, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991).

not required to use the turnpike and pay tolls as opposed to a taxpayer who is always required to pay taxes.

As to the Commission's argument that because the Project is funded by bonds, neither taxpayers nor toll payers have standing to sue, that argument is simply unsupportable. It fails to recognize that bondholders simply lend money to the public agency and receive in return the payment on interest, and, unless in default, the full return of the funds borrowed. The ultimate source of payment of the bonds and the improvement for which funds are borrowed is taxes, or here, tolls. If we were to adopt this view, a taxpayer who funds the payment of bonds would not have the right to challenge any project funded by a bond, even though taxes are the sole source of repayment.

While no taxes are being directly involved in paying for the bonds that are being used to fund the Project, we have held that a taxpayer has standing to sue if the Project is being carried out by an entity created by a governmental body of which the plaintiff is a taxpayer. In *Faden v. Philadelphia Housing Authority*, 424 Pa. 273, 227 A.2d 619 (1967), a taxpayer brought an action to set aside a contract between the Authority and a contractor because the contract was not awarded to the lowest responsible bidder. As here, the Authority filed preliminary objections contending that the taxpayer lacked standing to sue because no taxes were being used to fund the Authority contract. Overruling the trial court, our Supreme Court held that a taxpayer has a right to maintain an action if he was a taxpayer of the entity that created the authority. In explaining its rationale, the court stated:

> Yet the reasons for permitting taxpayer litigation involving nonauthority governmental bodies seem to be forgotten when applied to suits brought against public authorities. Rather than recognize the fact that public policy favors judicial review of the statutory and constitutional validity of the acts of public bodies and officials, courts too often require strict compliance with the traditional requirements, developed long before the advent of the public authorities,

that the taxpayer establish a direct pecuniary loss. Merely because a governmental unit has chosen to perform its public functions through an authority rather than directly affords no basis for granting such an authority greater immunity from taxpayer challenge than the body which created the authority.

The Pennsylvania Turnpike Commission is an agency created by the General Assembly to build, maintain and operate a public roadway, an undertaking that the Commonwealth could have chosen to do itself, making the rationale in *Faden* equally applicable to this case. Accordingly, Facchiano has standing as a commonwealth taxpayer to maintain an action against the Commission seeking to enjoin a contract to someone other than the lowest responsible bidder.

Not only does Facchiano have standing as a taxpayer, it also has standing as a toll payer. The analogy of tolls to taxes for purposes of standing is appropriate. Turnpike tolls, though not technically a tax, involve the mandatory payment of money to use a government-owned facility that all persons have the right and need to use. Not to award to the lowest responsible bidder has the same effect on toll payers as it does to taxpayers.

Accordingly, the Commission's preliminary objections on the basis of Facchiano's lack of capacity to sue is denied.

## II.

## STATE A CLAIM UPON WHICH
## RELIEF CAN BE GRANTED

█ The Commission demurred to Facchiano's Complaint by merely alleging that "Petitioner has failed to state a claim upon which relief can be granted." Pa.R.C.P. 1028(b) [3] provides that preliminary objections must specifically set forth the basis for the objection, and that general averments merely

---

3. Pa.R.C.P. 1028(b) provides:
   All preliminary objections shall be raised at one time. *They shall state specifically the grounds relied upon* and may be inconsistent. Two or more preliminary objections may be raised in one pleading. [Emphasis added].

alleging that the complaint "failed to state a claim" are insufficient. Ignoring the lack of specificity from the Commission's brief, it appears that the Commission is apparently contending that Facchiano has not pled sufficient grounds to be entitled to a special or preliminary injunction.

Whether Facchiano is entitled to a preliminary injunction is not a matter to be raised in preliminary objections. At this stage of pleading, what is at issue is whether the Complaint sets forth a valid cause of action in equity that injunctive relief can be granted. Once and if a request for a preliminary injunction is filed pursuant to Pa.R.C.P. 1531, those matters discussed in the Commission's brief may indeed be relevant as to whether a preliminary injunction can be issued and may also be relevant as a defense to be raised in New Matter, but the *form* in which they are raised here, the reason given in the Commission's brief, does not go to whether the underlying Complaint should be dismissed.

Even if the issues raised were properly before us, we could not even address them. The bid proposal containing the bid conditions and general provisions, which contain Form 408, was not attached either to the Complaint or preliminary objections. See Pa.R.C.P. 1019(h). Without the underlying documents, it is impossible for the court to review whether the Commission had the legal right to reject the bids. For those documents to be before the court at this stage of the proceeding, the Commission should have filed a preliminary objection. See Pa.R.C.P. 1028(a)(2).

Accordingly, the Commission's preliminary objections are dismissed and it is directed to file an Answer within thirty (30) days from the date of this order.

## ORDER

AND NOW, this 27th of January, 1993, the Respondents' Preliminary Objections are denied and it is directed to file a responsive pleading within thirty (30) days.