**BROWNING–FERRIS, INC., Plaintiff,**

v.

**MANCHESTER BOROUGH and York Waste Disposal Company, Defendants.**

No. 4:CV–96–1373.

United States District Court, M.D. Pennsylvania.

Aug. 9, 1996.

Thus, even under Defendants' restrictive interpretation of the Act, these two defendants would be proper defendants.

Gerald E. Burns, Klett Lieber Rooney & Schorling, Philadelphia, PA, for plaintiff.

Shawn P. McLaughlin, Menges & Snyder, York, PA, for defendant Manchester Borough.

Val E. Winter, Barley, Snyder, Senft & Cohen, L.L.P., York, PA, for defendant York Waste Disposal Company.

*MEMORANDUM*

McCLURE, District Judge.

### BACKGROUND:

On July 23, 1996, plaintiff Browning–Ferris, Inc. (BFI), initiated this action with the filing of a complaint pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment, along with a motion for a temporary restraining order and preliminary injunction. BFI alleges that its rights under the Fourteenth Amendment were violated by the awarding of a waste disposal contract to defendant York Waste Disposal Co. (York Waste) by defendant Manchester Borough.

Following a telephone conference call involving the court and counsel for the parties, the court denied the motion for a temporary restraining order and scheduled a hearing on the motion for a preliminary injunction, with time permitted for briefing. The hearing was held on Wednesday, July 31, 1996, at which time the court determined that BFI does not have a protected property interest under Pennsylvania law. The case therefore was dismissed for lack of subject matter jurisdiction.

This memorandum and order is intended to explain and memorialize that holding.

### DISCUSSION:

#### I. STANDARD OF REVIEW

##### A. Preliminary Injunction

■ Fed.R.Civ.P. 65 provides for the issuance of preliminary injunctions. In this Circuit,

> [a]t the trial level, the party seeking a preliminary injunction bears the burden of producing evidence sufficient to convince the court that (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by denial of relief; (3) granting preliminary relief will not result in even greater harm to the other party; and (4) granting preliminary relief will be in the public interest. ...

*ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987) (citation omitted).

■ Regarding the element of irreparable injury, the harm must be imminent and of such a nature that money damages alone cannot atone for it. *Id.*

##### B. Property Interest

■ The limited question before the court at this time is whether BFI has a property interest implicated by the awarding of the contract to York Waste. There is a property interest subject to protection under the Fourteenth Amendment when there is a legitimate claim of entitlement created by or grounded in state law. *Logan v. Zimmer-*

man Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 1154–1155, 71 L.Ed.2d 265 (1982); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 679 (3d Cir.1991), *reh'g denied, cert. denied*, 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992). Constitutional standards of due process govern the deprivation of a property interest, once conferred under state law. *Logan* at 432, 102 S.Ct. at 1155–1156.

### C. State Law

▇ The provision of Pennsylvania state law upon which BFI relies is a subsection of the Borough Code, *see* 53 Pa.Stat.Ann. §§ 45101 et seq., governing the award of contracts by a borough. That provision reads in relevant part:

> All contracts or purchases in excess of ten thousand dollars ($10,000), except those hereinafter mentioned, shall not be made except with and from the lowest responsible bidder after due notice ... In awarding contracts, council shall have the right to take into consideration such other factors as the availability, cost and quality of service.

53 Pa.Stat.Ann. § 46402(a). In interpreting this provision, the Pennsylvania courts have held uniformly that an action to enjoin a municipality from awarding a contract to any but the lowest responsible bidder may be brought only by a taxpayer of the municipality which has created the governmental entity awarding the contract; a disappointed bidder may bring an action only if it is a taxpayer of the contracting jurisdiction. *American Totalisator Co., Inc. v. Seligman*, 489 Pa. 568, 414 A.2d 1037, 1040 (1980); *C.O. Falter Construction Corp. v. Towanda Municipal Authority*, 149 Pa.Cmwlth. 74, 614 A.2d 328, 330 (1992). A "mere disappointed bidder" does not have standing to challenge the award of a contract. *C.O. Falter*, 614 A.2d at 331–332.

▇ The purpose of § 46402 and similar laws is to "invit[e] competition, to guard against favoritism, improvidence, extravagance, fraud, and corruption in the awarding of municipal contracts." *Berryhill v. Dugan*, 89 Pa.Cmwlth. 46, 491 A.2d 950, 952 (1985)

(quoting *Conduit and Foundation Corp. v. City of Philadelphia*, 41 Pa.Cmwlth. 641, 401 A.2d 376, 379 (1979)).

## II. STATEMENT OF FACTS

Because the issue before the court is limited the necessary facts also are limited. The Borough of Manchester, located in York County, Pennsylvania, received bids on the removal of waste from dwellings and businesses within its borders. Sealed bids were submitted and opened at a Borough Council meeting. The low bidder for a contract of three years was BFI, and the second lowest was York Waste. The difference in the bids was approximately $1,000, the bids being just over $200,000 for three years of waste removal service.

The Borough Council then voted to award the contract to York Waste, the incumbent contractor, because the Borough was happy with the service which had been provided. The starting date for the new contractual period was August 1, 1996.

BFI then initiated this lawsuit, seeking an injunction requiring Manchester to re-bid the contract. BFI is not a taxpayer in Manchester Borough, and represents that it is not likely to find a local taxpayer willing to pursue litigation in state court to enforce § 46402.

The court denied the motion for a temporary restraining order because a hearing was to occur before the effective date of the new contract, obviating the need for such relief.

## III. APPLICATION OF LAW TO FACTS

▇ As noted above, Pennsylvania law must create a property interest on the part of BFI before it may be entitled to relief under either the Fourteenth Amendment or § 1983. Our reading of the cases cited by the parties leads us to conclude that no property interest is created by § 46402.

The problem with BFI's contention that § 46402 limits the discretion of borough officials to award a contract to anyone other than the lowest responsible bidder is that Pennsylvania law on the matter is not limited to § 46402. As recited above, the Pennsylva-

nia courts have held that § 46402 and similar laws, i.e. those requiring an award of a contract by a governmental entity to the lowest responsible bidder, are enforceable only by taxpayers. The practical effect is that the limit on discretion is not so much on the award of the contract as on the outlay of public funds. That is, taking § 46402 and the standing rule together, a borough council may award a contract to any bidder, but may award the contract only to the lowest responsible bidder if any taxpayer objects (because only a taxpayer can enforce the statute).

■ In this context, we note that the brief submitted by the Borough in opposition to the motion for a preliminary injunction sets forth the argument that the last sentence of § 46402(a) gives Borough Council added discretion in awarding the contract. We agree to a limited extent. This reading makes sense if the contract is one for the purchase of something like equipment, such as garbage trucks, where the availability, cost and quality of service to maintain the equipment must be taken into account. However, the Borough's reading obliterates the requirement of awarding the contract to the lowest responsible bidder when the contract is for the provision of services themselves. *See, e.g., Riley v. Norristown Borough*, 96 Montgomery County Rep. 288, 64 Mun.L.Rep. 169 (1973) (contract for purchase of refuse collection trucks awarded to higher bidder valid under § 46402(a) because of service facilities available through higher bidder).

Of course, since we find that the standing requirement under Pennsylvania law precludes a finding of a property interest, the Borough's argument is not dispositive. We note as much only to emphasize that we reject the Borough's argument that it had wider discretion than BFI contends, and that the purported wider discretion is not a basis for our finding that there is no property interest on the part of BFI.[1]

BFI relies in large part upon *Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F.Supp. 1118 (W.D.Pa.1980), in which the court determined that there was a property interest in the awarding of a contract to the lowest responsible bidder under 53 Pa.Stat. Ann. § 23301,[2] a provision analogous to § 46402 but applicable to cities of the second class. The analysis of the court, however, is seriously flawed.

The *Three Rivers* court observed:

It may be that those plaintiffs [in cases based on procurement statutes] lacked standing to raise statutory claims, but the existence of standing cannot be questioned seriously with regard to the constitutional claim raised here. When a plaintiff alleges that he has been deprived of *his* liberty or property, it seems rather vain to argue that he does not satisfy the injury-in[-]fact, zone-of-interest, requirements for standing. In a sense, much contained in the notion of standing is subsumed within the question of whether or not plaintiff's interest in a particular benefit is sufficient to create a liberty or property right initially, a dispute which we have resolved previously in this case. In sum, the standing cases cited by defendants would only be relevant if plaintiffs' claim was statutory rather than constitutional.

502 F.Supp. at 1132 (footnotes omitted; emphasis in original). In one of the omitted footnotes, the court cites *Merriam v. Kunzig*, 476 F.2d 1233 (3d Cir.1973), *cert. denied*, 414

---

1. Of course, it can be argued that the plain language of the last sentence of § 46402 does not limit the consideration of the availability, cost and quality of service to contracts for the purchase of goods or equipment. The best that can be said, then, is that the statute then would be considered ambiguous, and must be construed in a manner consistent with the goal of the statutory scheme. *See* 1 Pa.Cons.Stat.Ann. § 1921(a). Since the goal is to prevent fraud, waste, etc., in the disbursement of public monies, and since the Borough's reading in effect nullifies the lowest responsible bidder requirement, the appropriate construction would be that which we have recit-

ed. *See* 1 Pa.Cons.Stat.Ann. § 1921(c)(1), (3), (4).

2. Repealed and replaced by 53 Pa.Stat.Ann. § 23308.1. According to Pennsylvania's official statutory compilation, the original section was repealed in 1965. 53 Pa.Stat.Ann. § 23301 (1996 supp.) (citing Pub.L. 234, § 1 (July 22, 1965)). It is not clear why the court and the parties continued to refer to § 23301 rather than to § 23308.1 as late as 1980. Regardless, since the subject matter continued in § 23308.1, the controlling legal principles remain the same.

U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973). In that case, the Third Circuit held that a bidder has standing under the federal procurement statutes. 476 F.2d at 1240–1243.

As to any case discussing a disappointed bidder's [3] standing to bring a case under a federal procurement statute, we agree with the *Three Rivers* court that such cases are inapposite. The contours of a constitutionally protected property right, however, are determined by state law. Under Pennsylvania law, the disappointed bidder has no right to challenge the award of a contract; from the perspective of a disappointed bidder, it is as if § 46402 does not exist.

To use the terminology of *Roth*, under Pennsylvania law, a taxpayer has a legitimate claim of entitlement to an award of a contract to the lowest responsible bidder. The lowest responsible bidder has no legitimate claim of entitlement; in fact, because of the standing rule, it has no claim whatsoever. To reason, then, as did the *Three Rivers* court, that the Pennsylvania cases on standing are inapposite is to ignore a vital principle of state law, i.e. the rule that designates the taxpayer as the party with an interest in the award of the contract and excludes the disappointed bidder from an interest. The rule is especially vital in this instance because state law governs whether a constitutionally protected interest exists. It simply does not follow when state law controls that state case law is inapposite.

■ It also is important to consider the rationale underlying the Pennsylvania standing rule:

It is clear that the statutory requirements for competitive bidding, and the ordinances enacted thereunder, do not exist solely to secure work or supplies at the lowest possible price, but also have the " 'purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts ... and are enacted ... not for the benefits [sic] or enrichment of bidders.' " *Yohe v. Burrell,* 418 Pa. 23, 28, 208 A.2d 847, 850 (1965),

adopting 10 McQuillan, Municipal Corporations § 29.29 (3d ed.1950). The obvious intent of the applicable statute is thus also to " 'close, as far as possible, every avenue to favoritism and fraud in its varied forms.' " *Louchheim v. Philadelphia,* 218 Pa. 100, 66 A. 1121 (1907), quoting *Mazet v. City of Pittsburgh,* 137 Pa. 548, 20 A. 693 (1890).

*Conduit and Foundation Corp.,* 401 A.2d at 379.

■ It follows from the rationale underlying the standing rule that the rule is intended specifically to achieve the purpose of limiting the benefit to taxpayers, and to keep bidders from using the competitive bidding statutes to enrich themselves.

BFI also relies on a number of federal cases involving liberty interests. It also relies on federal cases in which the subject was a property interest, but the court applied by analogy principles from cases involving liberty interests. For example, in *Hixon v. Durbin,* 560 F.Supp. 654 (E.D.Pa.1983), the court reviewed whether an aspirant to an employment contract with the Pennsylvania Public School Employees' Retirement Board had a protected property interest in the contract. The court held that, since the officials responsible for entering into the contract had authorized it, and were limited in their statutorily mandated review to searching for particular flaws, there was a protected property interest. 560 F.Supp. 654.

Both *Hixon* and *Three Rivers* derive their reasoning from *Winsett v. McGinnes,* 617 F.2d 996 (3d Cir.1980) (*en banc*), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981), a liberty interest case. We note at the outset that the *Winsett* decision is drawn into question by the Supreme Court's decision in *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Based on earlier decisions of the Supreme Court of the United States, the Third Circuit in *Winsett* held that a state inmate may have a constitutionally protected liberty interest in a work release program

---

**3.** Hereafter, "disappointed bidder" refers to a bidder which is not a taxpayer of the contracting

jurisdiction.

based on the statutory language creating the program as well as official policies and practices in administering the program. 617 F.2d at 1005–1007 (citing, *inter alia, Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Greenholtz v. Inmates of the Nebraska Penal Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)).

In *Sandin,* the Supreme Court rejected the rationale that the language of the statute governs whether there is a protected liberty interest. The plaintiff in *Sandin* was an inmate in the Hawaii penal system who was convicted of a misconduct in internal disciplinary proceedings. He was sentenced to 30 days in disciplinary segregation. —— U.S. at ——, 115 S.Ct. at 2295–2296, 132 L.Ed.2d at 424.

Rather than examine the statute and regulations governing the internal disciplinary process, the Supreme Court held that the reviewing court looks to the nature of the deprivation to determine whether a liberty interest is implicated. Specifically, the Court held that, in the prison context, liberty interests are limited to freedom from any restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." —— U.S. at ——, 115 S.Ct. at 2300, 132 L.Ed.2d at 429–430. The Court also included as implicating liberty interests the length of sentence and an unexpected manner of serving the sentence. *Id.* (citing *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (involuntary commitment to a mental hospital)).

In reaching its conclusion, the Court rejected explicitly the notion that a court considering a claim of deprivation of a liberty interest should review the applicable statute and regulations to determine whether there is a liberty interest. In *Winsett,* that is precisely the methodology employed by the Third Circuit. 617 F.2d at 1005–1008. Not only is the reasoning in *Winsett* undermined by *Sandin,* but its conclusion is highly questionable, since it is extremely doubtful that being denied participation in a work release program would be considered an atypical or significant hardship for an inmate.

■■■ The next question, then, is whether *Sandin* undermines those cases that have applied the analysis for determining whether a liberty interest exists in determining whether a claimed property interest exists.[4] In *Hixon,* for example, the court relied on *Winsett,* a liberty interest case, despite the fact that a property interest was at stake: "Although the protected interest in *Winsett* was a liberty interest, not a property interest, there is no reason to suppose that the Court of Appeals intended its holding to apply only to cases involving liberty interests." 560 F.Supp. at 660. The court in *Hixon* then noted that the court in *Three Rivers* had used the same analogy. 560 F.Supp. at 660–661.

Despite *Sandin,* however, the idea that state law, including the language of the statute, regulations, etc., and state court opinions interpreting state law, creates a property interest remains valid. First, the Supreme Court has so held, *see Logan,* 455 U.S. at 430–431, 102 S.Ct. at 1154–1155 (collecting cases), and has not changed this holding as *Sandin* did for liberty interest cases. Second, a liberty interest is more easily determinable by examining its "nature" than a

---

**4.** That is, the former rule was that the court would look to the language of statutes and regulations governing the subject of the claimed liberty interest, along with actual prison practices and policies. If the claimed interest was mandatory after certain qualifications were met, or at least the official exercise of discretion was limited when the qualifications were met, there was a protected liberty interest.

The same analysis applies to property interests. The reviewing court looks to the language of the state law, as well as any governmental practices or policies, to determine whether there is a legitimate claim of entitlement. A legitimate claim of entitlement exists when the claimant is entitled to the subject of the claimed interest based on meeting certain qualifications, or at least there is a limit on official discretion to grant or deny the subject of the claimed interest when the qualifications are met.

Since *Sandin* changed the analysis for liberty interests, the question becomes whether the analysis changes for property interests. That is, does the court look to the nature of the claimed entitlement, rather than the applicable state law, to determine whether there is a protected property interest?

property interest, because a restraint on freedom is more easily discernible than a benefit not obtained.

For instance, it is clear that a person may be incarcerated only under certain circumstances, so that it is obvious that a defendant is entitled to due process prior to incarceration. Along the same lines, it is obvious that confinement in a mental institution is quite different in nature than confinement in a penal institution. On the other hand, it is not obvious that a person is entitled to enter into a contract with the Commonwealth of Pennsylvania or one of its political subdivisions, and therefore state law must be examined to determine whether there is such a right and under what circumstances. "[T]he types of interests protected as 'property' are varied and, as often as not, intangible, relating 'to the whole domain of social and economic fact.'" *Logan* at 430, 102 S.Ct. at 1155.

We have no doubt that, if the Pennsylvania legislature enacted a statute requiring municipalities to award a contract to the lowest responsible bidder and allowing administrative or judicial review of all claims related to bids, there would be a protected property interest on the part of every low bidder who complied with all bidding requirements and was a responsible bidder. As such, BFI's claim is more akin to the situation distinguished by the Supreme Court in *Logan*. There, the plaintiff was held to have a protected property interest in a discrimination claim because "his right to redress is guaranteed by the State." 455 U.S. at 431, 102 S.Ct. at 1155. The Court contrasted this interest from an enforcement action under the National Labor Relations Act, in which a refusal by the General Counsel of the National Labor Relations Board to issue a complaint is not reviewable by the Board or the courts. 455 U.S. at 431 n. 6, 102 S.Ct. at 1155 n. 6. BFI also does not have a right to redress, and so does not have a protected property interest.

Our analysis relies on one important factor which BFI ignores in other arguments it raises. BFI contends that the decision of the Borough Council means that it is not a responsible bidder. Also, it contends that it has a property interest in having Borough Council exercise its discretion within the limits of § 46402. Both of these contentions presuppose that BFI has a right to have Borough Council confer the benefit on it, but Pennsylvania law is to the contrary. The limits on discretion are applicable only if another precondition is met: a taxpayer must object to the decision of the Borough Council. Without a taxpayer being the party objecting, there is no right to review the exercise of discretion on the part of Borough Council and, in effect, no limit on Council's discretion.

The latter principle is that which distinguishes this case from *Hixon*. The court there noted:

> While Mr. Hixon had no protected property interest *so long as he was merely seeking a contract* with the Board, a protected property interest arose after the Board formally voted, pursuant to its statutory authority, to enter into contracts with him. At that point, Mr. Hixon was entitled to the substantive benefit of those contracts *unless* they contained one or more of the flaws defendants were responsible for detecting in the course of their statutorily mandated review.

560 F.Supp. at 661 (initial emphasis added; other emphasis in original). In this case, BFI had not been awarded the contract, nor were there limits, enforceable by BFI, on the discretion to award the contract. *Hixon* is inapposite.

BFI also contends that the import of Borough Council's decision is that it is not a responsible bidder. Actually, Borough Council simply awarded the contract without making a determination as to BFI's status as a responsible bidder; the conclusion argued by BFI does not necessarily follow. If a taxpayer were to challenge the decision, and the decision was upheld, the necessary conclusion would be that BFI either did not comply with the bidding requirements or was not a responsible bidder. Since no taxpayer has challenged the decision to award the contract, it cannot be said that BFI's status as a responsible bidder has been questioned.

Another opinion cited by BFI is *Harrisburg Hospital v. Thornburgh*, 616 F.Supp.

699 (M.D.Pa.1985), *aff'd,* 791 F.2d 918 (3d Cir.1986) (table), noting that the reasoning of *Three Rivers* is "implicitly adopted" therein. Actually, we do not disagree with the standard addressed in *Three Rivers;* we disagree with its application to the facts and its interpretation of Pennsylvania law. We have concluded that there is no property interest under Pennsylvania law, a conclusion not in conflict with *Harrisburg Hospital.* Judge Caldwell therein stated with respect to, *inter alia, Three Rivers:* "We do not believe that plaintiffs here have articulated an equivalent interest." 616 F.Supp. at 710. By its own language, *Harrisburg Hospital* is inapposite with respect to the issue of whether BFI has a protected property interest.

Our conclusion is that the *Three Rivers* opinion simply was in error because Pennsylvania law does not create a protected property interest in the process of awarding a public contract. It should be noted that this court is not alone in at least questioning the reasoning of *Three Rivers. See, e.g., Circa Limited v. City of Miami,* 79 F.3d 1057, 1063 (11th Cir.1996) (collecting cases which limit *Three Rivers* and questioning the viability of "the idea that a bidder without a contract may have more powerful rights than a bidder with a contract"; citation omitted); *Kim Construction Co., Inc. v. Board of Trustees of the Village of Mundelein,* 14 F.3d 1243, 1248 (7th Cir.1994) (finding *Three Rivers* implicitly overruled as to its holding that a property interest exists in a municipality's following its own procedures by *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), and finding *Three Rivers* otherwise

inapplicable as resting on a proposition of Pennsylvania law[5]).

▮▮▮ Finally, we note that the Commonwealth Court has held specifically that the lowest-responsible-bidder statutes do not confer a property interest on the part of a low bidder. *Michael Facchiano Contracting, Inc. v. Pennsylvania Turnpike Comm'n,* 153 Pa.Cmwlth. 138, 621 A.2d 1058, 1059 (1993) (citing *J.P. Mascaro & Sons, Inc. v. Bristol,* 95 Pa.Cmwlth. 376, 505 A.2d 1071 (1986)). While this holding is not binding on this court,[6] the reasoning is the same or nearly the same as the reasoning we have set forth and which this court, obviously, finds persuasive. Also, the reasoning of *J.P. Mascaro & Sons, Inc.,* was based on the opinion of Judge Luongo of the Eastern District of Pennsylvania in *J.P. Mascaro & Sons, Inc. v. Township of Bristol,* 497 F.Supp. 625 (E.D.Pa. 1980).[7] That opinion is consistent with our holding in this case.

## IV. CONCLUSION

For all of these reasons, we find that BFI does not have a property interest in the award of the contract to the lowest responsible bidder. The effect of this holding is that BFI cannot demonstrate a likelihood of success on the merits, and the motion for a preliminary injunction was denied at the hearing on July 31, and will be reaffirmed in the attached order. Also, absent a protected liberty interest, there is no constitutional claim, and no claim otherwise within the jurisdiction of this court. The complaint there-

---

**5.** I.e., the proposition we have found to be the subject of an erroneous application of the governing standard of constitutional law.

**6.** This point may require further explanation. Issues of state law are determined by the state courts. However, the question of whether a protected property interest exists is a separate question, and must be determined for present purposes by this court. For instance, state law governs the standing rule. This court then must determine whether, given the standing rule, a protected property interest exists.

Viewed another way, state law governs: (1) the nature of the benefit, whether it is money, the ability to enter into a municipal contract, or any

of the other tangible and intangible interests which may be protected as property; (2) who is eligible for the benefit; (3) other qualifications for the benefit, such as applications or bids; and (4) how the benefit is granted, including any limit on official discretion. The court reviewing the constitutional question then determines, based on the statutes, regulations, state case law, etc., which establish all of the foregoing, whether the plaintiff has a legitimate claim of entitlement to the benefit.

**7.** Judge Luongo's opinion also rebuts BFI's contention that it cannot do business in Pennsylvania and distinguishes the authority related to the debarment from public contracts. 497 F.Supp. at 628.

fore will be dismissed under Fed.R.Civ.P. 12(h)(3).

An appropriate order will issue.